PAMAR ENTERPRISES, INC v HUNTINGTON BANKS OF MICHIGAN

Docket No. 196202. Submitted September 3, 1997, at Lansing. Decided March 20, 1998, at 9:25 A.M.

Pamar Enterprises, Inc., and East Jordan Iron Works, Inc., brought an action in the Macomb Circuit Court against Huntington Banks of Michigan and First State Bank of East Detroit after First State debited Pamar's checking account for a check payable to J. Brothers Excavating, Inc., (JBE) and East Jordan but endorsed only by JBE for deposit to an account held by J. Brothers Trucking, Inc., (JBT) at Huntington Banks. Huntington Banks impleaded JBE, JBT, and Patrick Jones (a shareholder and officer of JBE and JBT), and First State filed a cross-claim against Huntington Banks. The action was consolidated with an action by JBE against Pamar, in which Pamar filed a counterclaim and impleaded JBT and Jones. After Pamar wrote a second check to East Jordan to pay the obligation it had sought to discharge with the first check, the court, John B. Bruff, J., granted summary disposition for Huntington Banks and First State with respect to Pamar and East Jordan's claims and dismissed First State's cross-claim against Huntington Banks and Huntington Banks' third-party complaint against JBE, JBT, and Jones. Pamar and East Jordan appealed.

The Court of Appeals *held*:

1. Section 3-110(4) of the Uniform Commercial Code, MCL 440.3110(4); MSA 19.3110(4), provides that an instrument made payable to two or more persons jointly and not alternatively is *payable to all of them and may be negotiated, discharged, or enforced only by all of them.* Although § 3-110(4) establishes to whom an instrument is properly payable, it does not address the circumstances under, or the extent to, which a bank may be held liable for improperly paying a check. Section 3-110(4) provides no basis on which the banks in this case can be held liable.

2. A bank may be liable to an intended payee for conversion if it makes or obtains payment on a check that is payable to multiple payees jointly and not alternatively but endorsed by less than all payees. UCC 3-420(1), MCL 440.3420(1); MSA 19.3420(1).

3. The drawer of a check on which the drawee bank makes an unauthorized payment may seek from the drawee bank recredit of

its account in the amount of the unauthorized payment. UCC 4-401(3), MCL 440.4401(3); MSA 19.4401(3).

4. An intended payee's action for conversion against a depositary or drawee bank is subject to the "mitigation of damages" defense, under which the liability of the bank is reduced to the extent that the intended payee receives the proceeds of the check applied to the specific obligation the check was intended to discharge.

5. A drawer's action for recredit of account against a drawee bank is subject to the "intended-payee" defense, under which the drawee bank would not be liable if the proceeds of the check reach the person the drawer intended to pay and the drawer suffers no loss proximately caused by the drawee's improper payment.

6. In this case, summary disposition of Pamar's claim of conversion against Huntington Banks was properly granted in favor of Huntington Banks because a drawer may not maintain an action for conversion against a drawee for unauthorized payment of a check. The trial court, however, erred in granting summary disposition to First State with respect to the conversion claims raised by Pamar and East Jordan and to Huntington Banks with respect to the conversion claim raised by East Jordan because there remain material issues of fact that preclude application of the mitigation of damages defense and the intended-payee defense. Should conversion be established, damages must include interest from the date of conversion.

Affirmed in part and reversed in part.

1. BANKS AND BANKING — CHECKS — UNAUTHORIZED PAYMENTS — CONVERSION.

A bank may be liable to an intended payee of a check for conversion if it makes or obtains payment on a check that is payable to multiple payees jointly and not alternatively but endorsed by less than all payees; an action for such conversion is subject to the "mitigation of damages" defense, under which the liability of a drawee or depositary bank is reduced to the extent that the intended payee receives the proceeds of the check applied to the specific obligation the check was intended to discharge; damages in an action for such conversion include interest from the date of conversion (MCL 440.1106, 440.4401[3]; MSA 19.1106, 19.4401[3]).

2. BANKS AND BANKING — CHECKS — UNAUTHORIZED PAYMENTS — RECREDIT OF ACCOUNTS.

The drawer of a check on which the drawee bank makes an unauthorized payment may, as its remedy from the drawee bank, seek recredit of the account in the amount of the unauthorized payment; an action for such recredit is subject to the "intended-payee" defense, under which the drawee bank would not be liable if the

proceeds of the check reach the person the drawer intended to pay and the drawer suffers no loss proximately caused by the drawee's improper payment (MCL 440.4401[3]; MSA 19.4401[3]).

*Butzel Long* (by *Edward M. Kalinka*), for Pamar Enterprises, Inc. and East Jordan Iron Works, Inc.

*Bloomberg, Anderson, Moore & Bahorski, P.C.* (by *Jeffrey A. Bahorski*), for Huntington Banks of Michigan.

*Bodman, Longley & Dahling LLP* (by *Kay E. Malaney*), for First State Bank of East Detroit

Before: HOLBROOK, JR., P.J., and REILLY and JANSEN, JJ.

REILLY, J. Plaintiffs appeal as of right from a final judgment dismissing (1) plaintiffs' complaint against First State Bank of East Detroit (First State) pursuant to First State's motion for summary disposition, (2) First State's cross-complaint against Huntington Banks of Michigan (Huntington), and (3) Huntington's third-party complaint against J. Brothers Excavating, Inc., (JBE) and J. Brothers Trucking, Inc., (JBT). Plaintiffs also contest the trial court's earlier order dismissing plaintiffs' complaint against Huntington pursuant to Huntington's motion for summary disposition. We affirm in part and reverse in part.

I. FACTS

Pamar Enterprises, Inc., (Pamar) was a general contractor on a public road construction project and JBE was one of the subcontractors on the project. East Jordan Iron Works, Inc., (East Jordan) delivered some construction materials to JBE for use on the project. In order to pay for those materials, Pamar pre-

pared a check for $50,000 payable to JBE "and" East Jordan and presented it to JBE, intending that all of the proceeds would eventually be paid to East Jordan. The check was drawn on Pamar's account at First State, the drawee bank. Without the endorsement of East Jordan, JBE deposited the check (endorsed "for deposit only") into an account held by its "sister corporation," JBT, at Huntington, the depositary bank. When Huntington presented the check to First State through banking channels, First State paid the check from Pamar's account without the endorsement of East Jordan. JBE never paid East Jordan for the supplies, as had been intended by Pamar.

Subsequently, a dispute arose between JBE and Pamar regarding the construction project. On January 20, 1995, JBE filed a lawsuit against Pamar to collect payment for work it had allegedly performed under the contract (hereinafter the construction case). In response, Pamar filed a counterclaim against JBE, alleging a breach of the construction contract and a third-party complaint against JBT and Patrick Jones, an officer and shareholder of JBE and JBT, alleging that JBE, JBT, and Patrick Jones were liable for conversion with regard to the $50,000 that was supposed to have been paid to East Jordan. On June 22, 1995, the trial court dismissed Pamar's conversion claim on the ground that the issuer of a check cannot maintain a conversion claim for its proceeds. On September 25, 1995, the trial court entered an order, pursuant to a stipulation by the parties, providing, in part, (1) that Pamar would make a payment of $50,000 to East Jordan and (2) that Pamar was entitled to a "credit/back charge" against JBE for $117,982.07, attributable to

construction materials provided by East Jordan.[1] On the same day, Pamar paid $50,000 to East Jordan, by way of a second check. In return, East Jordan agreed to waive its construction lien rights against Pamar. Because the stipulated order did not completely resolve the issues in the construction case, JBE and Pamar proceeded to trial.[2]

On June 7, 1995, before Pamar agreed to pay the second $50,000 check to East Jordan, Pamar and East Jordan filed the instant suit against First State and Huntington, alleging that the banks were negligent and that they had violated various statutory duties in their handling of the first $50,000 check (hereinafter the bank case). Pamar and East Jordan alleged that East Jordan had been damaged in the amount of the $50,000 it never received as payment for the construction materials and that Pamar's damages consisted of the risk of injury it faced in the form of a possible claim by East Jordan against Pamar's construction bond.[3] On July 20, 1995, Huntington filed a third-party complaint in the bank case against JBE, JBT, and Patrick Jones, alleging breach of transfer warranties, misrepresentation, and fraud. On August 14, 1995, First State filed a cross-claim in the bank case against Huntington, alleging negligence, breach of transfer warranties, and breach of presentment warranties.

On August 31, 1995, JBE moved to consolidate the construction case and the bank case. This motion was

---

[1] In addition to the construction materials Pamar had attempted to pay for with the $50,000 check payable to JBE and East Jordan, Pamar had already paid East Jordan $67,982.07 for other construction materials.

[2] The trial in the construction case occurred after the trial court issued the final judgment in the instant action.

[3] Pamar posted the construction bond pursuant to MCL 129.201; MSA 5.2321(1).

granted on December 6, 1995. On October 23, 1995, after Pamar paid East Jordan the second $50,000 check for the construction materials, Huntington moved for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). On October 26, 1995, East Jordan assigned all of its rights to its claim in the bank case to Pamar, ostensibly in return for the $50,000 payment.[4] On November 6, 1995, First State joined in Huntington's motion for summary disposition and, on the same day, Pamar moved for summary disposition pursuant to MCR 2.116(C)(10). On February 5, 1996, the trial court entered an opinion and order denying Pamar's motion for summary disposition and granting Huntington's motion for summary disposition pursuant to MCR 2.116(C)(7). The trial court reasoned that summary disposition was appropriate because East Jordan had been paid for the construction materials and Pamar was not damaged because it received a credit for the payment pursuant to the September 25, 1995, stipulated order entered in the construction case. Finally, on April 30, 1996, the trial court granted First State's motion for summary disposition pursuant to MCR 2.116(C)(10), reasoning that neither Pamar nor East Jordan suffered damages as a result of First State's actions. On the same day, the trial court also denied First State's motion for summary disposition against Huntington on its crossclaim. The final judgment in the bank case, dismissing all the remaining claims, was issued on June 6, 1996.

---

[4] As noted earlier, on September 25, 1995, East Jordan waived its construction lien rights against Pamar in return for the same $50,000.

II. CLAIMS AND DEFENSES

On appeal, plaintiffs argue that summary disposition was improperly granted to both defendant banks. Specifically, plaintiffs contend (1) that both defendants are liable to plaintiffs for "wrongfully honoring the check" under MCL 440.3110(4); MSA 19.3110(4), (2) that both defendants are liable to East Jordan for conversion under MCL 440.3420; MSA 19.3420, and (3) that First State is liable to Pamar for conversion. Plaintiffs also argue that the defendant banks are liable to plaintiffs for interest on the damages for the period of the alleged conversion. We will address plaintiffs' arguments together.

A. THE CHECK

Pursuant to MCL 440.3110(4); MSA 19.3110(4), an instrument made payable to two or more persons not alternatively is payable to all of them and may be negotiated, discharged, or enforced only by all of them. When the word "and" separates the names of two payees on an instrument, the instrument is payable jointly and not alternatively. See MCL 440.3110; MSA 19.3110, Comment 4. In this case, because the check at issue was made payable to JBE "and" East Jordan, the endorsement of JBE alone was not sufficient to allow negotiation of the check. MCL 440.3110(4); MSA 19.3110(4); see also MCL 440.3420; MSA 19.3420, Comment 1. Although MCL 440.3110; MSA 19.3110 establishes to whom an instrument is properly payable, it does not address the circumstances under, or the extent to, which a bank may be held liable for improperly paying a check. Accordingly, defendants are not liable under MCL 440.3110(4); MSA 19.3110(4), though they may be lia-

ble under other sections of the Uniform Commercial Code, as adopted in Michigan.

B. CONVERSION

A conversion is any distinct act of dominion wrongfully exerted over another person's personal property. *Trail Clinic, PC v Bloch*, 114 Mich App 700, 705; 319 NW2d 638 (1982). Conversion does not necessarily imply a complete and absolute deprivation of personal property. There may be a deprivation that is only temporary, as where the plaintiff's personal property is restored to him. *Even-Heat Co v Wade Electric Products Co*, 336 Mich 564, 572; 58 NW2d 923 (1953). A check is considered the personal property of the designated payee. *Trail Clinic, supra* at 705. Under MCL 440.3420(1); MSA 19.3420(1), an instrument is converted if a bank "makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Thus, a bank may be liable for conversion if it makes or obtains payment on a check that is payable to two payees, not alternatively, but endorsed by only one of the payees. See MCL 440.3420(1), Comment 1. Payment of a check with a missing endorsement is the legal equivalent of payment over a forged endorsement. *Kelly v Central Bank & Trust Co of Denver*, 794 P2d 1037, 1042 (Colo App, 1989); *Mandelbaum v P & D Printing Corp*, 279 NJ Super 427, 432; 652 A2d 1266 (1995). A conversion action may be brought by the intended payee against either the depositary bank or the drawee bank.[5] MCL

---

[5] The depositary bank may be ultimately liable to the drawee bank by virtue of presentment warranties contained in MCL 440.3417; MSA 19.3417 and MCL 440.4208; MSA 19.4208. See also *Comerica Bank v Michigan*

440.3420(1); MSA 19.3420(1); 2 White & Summers, Uniform Commercial Code, Practitioner Treatise Series (4th ed), § 18-4, pp 222-225. However, the drawer of the check may not maintain an action for conversion, because the check represents an obligation of the drawer rather than property of the drawer. See MCL 440.3420(1), Comment 1; see also *Qatar v First American Bank of Virginia*, 880 F Supp 463, 467-468 (ED Va, 1995); *Stone & Webster Engineering Corp v First Nat'l Bank & Trust Co of Greenfield*, 345 Mass 1, 7; 184 NE2d 358 (1962); *Maldonado v Aetna Casualty & Surety Co*, 184 AD2d 553, 554-555; 584 NYS2d 864 (1992). Therefore, while East Jordan (the intended payee) may be able to maintain a conversion action against both Huntington and First State, Pamar (the drawer) may not maintain a conversion action against either defendant.

### C. ACTION TO RECREDIT THE DRAWER'S ACCOUNT

Although the drawer of a check may not maintain an action in conversion, the drawer may have a remedy against the drawee for the unauthorized payment of a check. Under MCL 440.4401(3); MSA 19.4401(3), a bank may charge against the account of its customer a check or item that is "properly payable." Implicit in this rule is the notion that a bank may not charge against the account of its customer a check or item that is *not* "properly payable." See *Nat'l Credit Union Administration v Michigan Nat'l Bank of Detroit*, 771 F2d 154, 156-157 (CA 6, 1985); *Trans-American Steel Corp v Federal Ins Co*, 535 F Supp

---

*Nat'l Bank*, 211 Mich App 534, 537-538; 536 NW2d 298 (1995); *Stone & Webster Engineering Corp v First Nat'l Bank & Trust Co of Greenfield*, 345 Mass 1, 8-9; 184 NE2d 358 (1962).

1185, 1189 (ND Ga, 1982); *Ambassador Financial Services, Inc v Indiana Nat'l Bank*, 605 NE2d 746, 751 (Ind, 1992). Accordingly, the drawer of a check has a remedy against the drawee bank for recredit of the drawer's account for the unauthorized payment of the check in the amount of the improper payment. See *Perini Corp v First Nat'l Bank of Habersham Co*, 553 F2d 398, 403-404 (CA 5, 1977); *Ambassador, supra* at 751; *Stone & Webster Engineering, supra* at 9; *Maldonado, supra* at 555; see also MCL 440.3420(1), Comment 1. Therefore, subject to any defenses raised, Pamar may maintain an action against First State under MCL 440.4401(3); MSA 19.4401(3) for recredit of its account.[6]

### D. DEFENSES

As noted, summary disposition was granted to both banks on the basis that neither East Jordan nor Pamar suffered injury as a result of the banks' actions. Although not articulated by the trial court, two closely related doctrines, the "mitigation of damages defense" and "intended-payee defense," are suggested by the trial court's decision. The mitigation of damages defense provides that the liability of a drawee or depositary bank in a conversion action

---

[6] In *Comerica Bank, supra* n 5, at 539, this Court explained in dicta that "[a] drawee bank is strictly liable to the drawer for the amount of the improper payment where it pays a check over a forged or improper endorsement of a payee." In support of this proposition, the *Comerica Bank* panel relied on the presentment warranty contained in MCL 440.3417(1)(a); MSA 19.3417(1)(a). Our reliance now on UCC 4-401 (MCL 440.4401; MSA 19.4401 ) rather than MCL 440.3417(1)(a); MSA 19.3417(1)(a) for the same proposition is in accordance with the weight of authority on the issue. See 2 White & Summers, Uniform Commercial Code, Practitioner Treatise Series (4th ed), § 21-3, pp 362-365, and cases cited earlier in this opinion.

brought by an intended payee is reduced to the extent the intended payee receives the proceeds of the check applied to the specific obligation the check was intended to discharge. See *Sherrill White Constr, Inc v South Carolina Nat'l Bank*, 713 F2d 1047, 1050-1051 (CA 4, 1983); *Lund v Chemical Bank*, 797 F Supp 259, 272-273 (SD NY, 1992); *First Independent Bank v Stottlemyer & Shoemaker Lumber Co*, 384 So 2d 952, 954 (Fla App, 1980); *Ambassador, supra* at 752. The defense is intended to prevent the unjust enrichment of the intended payee. E.g., *Ambassador, supra* at 752. It is also consistent with the Uniform Commercial Code's general rule regarding remedies, which provides that an aggrieved party should be put in as good a position as if the other party had fully performed and, by implication, suggests that the aggrieved party should not be put in a better position. See MCL 440.1106; MSA 19.1106; *White Co Bank v Noland Co*, 214 Ga App 780, 783; 449 SE2d 325 (1994).

Similarly, the intended-payee defense provides that a drawee bank is not liable to the drawer of a check for an improper payment if (1) the proceeds of the check reach the person the drawer intended to receive them and (2) the drawer suffers no loss proximately caused by the drawee's improper payment. *Ambassador, supra* at 752-754; *Kosic v Marine Midland Bank*, 76 AD2d 89, 92; 430 NYS2d 175 (1980), aff'd 55 NY2d 621; 430 NE2d 1317 (1981); see also *Trans-American Steel, supra* at 1189-1190. This defense is intended to prevent the unjust enrichment of the drawer. *Ambassador, supra* at 752; *Kosic, supra* at 92. Although neither the mitigation of damages defense nor the intended-payee defense has been applied by a Michigan appellate court in the factual

context presented here, this Court has accepted the rationale underlying their application. See *Comerica Bank v Michigan Nat'l Bank*, 211 Mich App 534, 538; 536 NW2d 298 (1995) (holding that "the intended-payee defense is available to a bank in defending an action for breach of its presentment warranties").

### III. APPLICATION OF LAW TO FACTS

This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Guerra v Garratt*, 222 Mich App 285, 288; 564 NW2d 121 (1997). When reviewing a motion granted pursuant to MCR 2.116(C)(7), we consider all affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construe the pleadings in favor of the plaintiff. *Smith v YMCA of Benton Harbor/St Joseph*, 216 Mich App 552, 554; 550 NW2d 262 (1996). A motion under MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. *Id.* Similarly, when reviewing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court must consider the pleadings, affidavits, admissions, depositions, and any other documentary evidence available to it in a light most favorable to the nonmoving party. *Tranker v Figgie Int'l, Inc*, 221 Mich App 7, 11; 561 NW2d 397 (1997). We must then determine whether there exists a genuine issue of material fact on which reasonable minds could differ or whether the moving party is entitled to judgment as a matter of law. *Id.*

In this case, although East Jordan never received the "proceeds" of the converted check, it is undisputed that (1) East Jordan received full payment of

the amount of that check in the form of a second check from Pamar and (2) the second check was applied to the specific obligation the first check was intended to discharge. Therefore, East Jordan would be unjustly enriched if it again received the full amount of the check from Huntington and First State in this conversion action. Accordingly, Huntington's and First State's conversion liability to East Jordan should be reduced by $50,000 pursuant to the mitigation of damages defense. This does not mean, however, that a conversion did not occur, or that East Jordan was not damaged by the conversion. Damages in a conversion action include interest from the date of conversion. *Ehlman v Libralter Plastics, Inc*, 207 Mich App 43, 45; 523 NW2d 639 (1994); see also *Hillsley v State Bank of Albany*, 24 AD2d 28, 31; 263 NYS2d 578 (1965) (holding that damages on a converted check include interest from date of conversion). If East Jordan is able to establish at trial that Huntington and First State converted the first check from Pamar, Huntington and First State would be liable to East Jordan for interest during the period of deprivation between the conversion and East Jordan's receipt of the second check. Because Huntington and First State may be liable to East Jordan for such interest, we hold that the trial court erred in granting Huntington's and First State's motions for summary disposition with respect to East Jordan's claim of conversion. *Guerra, supra* at 288.

Regarding Pamar's claim against First State for "wrongfully honoring the check" (which would have been more properly labeled an action to recredit its account), the essential question on appeal is whether the trial court erred in concluding as a matter of law

that Pamar suffered no damages as a result of First State's improper payment of the check. Because East Jordan ultimately received the equivalent of the proceeds of the original check, First State would be entitled to rely on the intended-payee defense as long as Pamar suffered no loss proximately caused by First State's improper payment. See *Ambassador, supra* at 752-754. However, when viewed in a light most favorable to Pamar, the record is such that reasonable minds could differ with regard to the question whether Pamar suffered any such loss.

It is undisputed that (1) if the first $50,000 check had reached East Jordan as intended, Pamar would not have been required to write a second check for the same amount, and (2) pursuant to a pretrial stipulation in the construction case, Pamar agreed to write a second check to East Jordan and JBE agreed to grant a "credit/back charge" to Pamar. Solely on the basis of the existence of this stipulation, the trial court reasoned that Pamar suffered no damages as a result of First State's improper payment of the first check. Two underlying conditions must be established to draw this conclusion. First, because the stipulation itself was only an agreement between Pamar and JBE, for it to have had any value to Pamar, its existence would have had to eliminate or reduce some liability owing from Pamar to JBE. Second, assuming the stipulation had such value, the only way the credit/back charge within the stipulation could be deemed to have extinguished the loss incurred by Pamar as a result of the improper payment of the first check is if Pamar had elected to accept the credit/back charge as reimbursement for the loss incurred as a result of the fact that it had to write a second check to East

Jordan. If Pamar accepted the credit/back charge as settlement of some other debt owed by JBE, it could not be said to have cured Pamar's damages sustained as a specific result of the improper payment of the first check.

The existence of either of these two conditions is not apparent from the face of the stipulation. For instance, if the credit/back charge did not reduce or eliminate some liability owing from Pamar to JBE, but instead merely represented an acknowledgment by JBE that it was liable to Pamar for the amount of the second check (or for some other amount), then it was only a promise to pay that, in itself, could not have made Pamar whole. Another possibility suggested by the face of the stipulation is that the credit/back charge merely represented an acknowledgment by JBE that it was liable for all of the construction materials actually supplied by East Jordan. If this were so, Pamar would not have been made whole, because Pamar paid for $50,000 worth of the construction materials twice. Finally, if the credit/back charge had the effect of reimbursing Pamar for $117,982.07 worth of construction materials supplied by East Jordan, it is not clear whether $50,000 of that amount was intended to account for the fact of the *second* check, because it is not clear from the record whether JBE was ultimately responsible to pay for all or only part of the construction materials supplied by East Jordan. For all of these reasons, the effect of the credit/back charge was unclear on the record before the trial court. Therefore, we hold that the record does not support the intended-payee defense, questions of fact remain, and First State was not entitled to summary

disposition with regard to Pamar. *Guerra, supra* at 288.

We reverse the trial court's grant of summary disposition to First State with respect to both plaintiffs and to Huntington with respect to East Jordan, because the defenses asserted were insufficient to merit judgment as a matter of law. We affirm the trial court's grant of summary disposition to Huntington with respect to Pamar, because there is no basis for any liability from Huntington to Pamar.