595 N.W.2d 162 (1999)
235 Mich. App. 541
Donna PATRICK, Kevin Patrick and Karen Patrick-miller, Plaintiffs-Appellants,
v.
U.S. TANGIBLE INVESTMENT CORPORATION, Defendant-Appellee.
Docket No. 204902.
Court of Appeals of Michigan.
Submitted January 5, 1999, at Grand Rapids.
Decided March 23, 1999, at 9:00 a.m.
Released for Publication June 22, 1999.
*163 Robert P. Walsh, Battle Creek, for the plaintiffs.
*164 James D. Norlander, Battle Creek, for the defendant.
Before MICHAEL J. KELLY, P.J., and GRIBBS and MURPHY, JJ.
MICHAEL J. KELLY, P.J.
Plaintiffs appeal as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(7). The motion was based on a claim that this action is subject to an agreement to arbitrate. We affirm.
Plaintiffs filed this action against defendant to recover damages for lost investment value in coins purchased from defendant, a coin dealer in Dallas, Texas. Plaintiffs contacted Patterson Strategy Organization, an original codefendant later dismissed from this action, for investment advice. Plaintiffs were referred to defendant by Patterson. On May 27, 1995, Burnett Marcus, defendant's agent, visited the home of plaintiffs Kevin and Donna Patrick. Plaintiff Karen Patrick-Miller was also present at this initial meeting. Mr. Marcus presented plaintiffs with an investment strategy in precious metals and rare coins. This initial meeting produced no sale or signed contract for sale. Marcus returned to Texas, and negotiations continued between the parties through telephone and facsimile communications.
In June of 1995, Donna Patrick purchased $41,040 in gold coins and Karen Patrick-Miller purchased $51,285 in gold coins from defendant. Each signed an "Order and Selection Form for Certified Gold Coins" evidencing their orders. These purchase orders included a provision stating that all disputes would be resolved through arbitration. In December of 1995, telephone communications between Kevin Patrick and Marcus resulted in Donna Patrick purchasing another coin for $8,535. Donna Patrick did not sign the purchase order. The purchase order was signed by Marcus at the instruction of Kevin Patrick.
In early 1996, plaintiffs obtained independent appraisals of the coins. The coins purchased by plaintiffs were valued at substantially less than their purchase price. On July 16, 1996, plaintiffs sent letters of cancellation to defendant seeking to rescind their purchases. Defendant submitted the dispute to arbitration pursuant to the terms of the purchase agreements. Plaintiffs did not appear for arbitration and awards were issued in favor of defendant. Defendant moved to dismiss the instant action pursuant to MCR 2.116(C)(7). On July 20, 1996, the trial court granted defendant's motion.
This Court reviews decisions regarding motions for summary disposition de novo. Pamar Enterprises, Inc. v. Huntington Banks of Michigan, 228 Mich.App. 727, 738, 580 N.W.2d 11 (1998). When reviewing a motion granted pursuant to MCR 2.116(C)(7), this Court considers all affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construes the pleadings in favor of the plaintiff. Pamar, supra at 738, 580 N.W.2d 11. A motion under MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. Pamar, supra at 738, 580 N.W.2d 11.
Plaintiffs claim the first sale between defendant and Donna Patrick and Karen Patrick-Miller, which occurred in June of 1995, constituted a home solicitation that was covered by the home solicitation sales act. MCL 445.111 et seq.; MSA 19.416(201) et seq. Plaintiffs argue defendant's sales contract does not conform to the statutory cancellation notice requirement, which gives a buyer three business days to cancel the transaction. Therefore, plaintiffs' letter of cancellation was not subject to the three-day restriction and validly canceled the sales contract. We disagree.
Plaintiffs rely on M.C.L. § 445.113; MSA 19.416(203), which enables a buyer to cancel a home sales agreement at any time before the seller gives notice to the buyer *165 that the contract may be canceled three business days after the date of execution. MCL 445.113; MSA 19.416(203) states in relevant part:
(1) ... The agreement or offer to purchase shall contain a statement substantially as follows in immediate proximity to the space reserved in the agreement or offer to purchase for the signature of the buyer:
"You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."

* * *
(4) Until the seller has complied with this section, the buyer may cancel the home solicitation sale by notifying the seller in any manner and by any means of his or her intention to cancel.
The purchase agreement between plaintiffs and defendant does not contain this statutory notice of cancellation.
Defendant argues the sale in question did not fall within the statutory umbrella of the home solicitation sales act. A home solicitation sale is defined as:
[A] sale of goods or services of more than $25.00 in which the seller or a person acting for the seller engages in a personal, written, or telephonic solicitation of the sale at a residence of the buyer and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller. [MCL 445.111(a); MSA 19.416(201)(a).]
In the instant case, the record indicates that the first sale of coins did not come to fruition until approximately one month after the initial meeting between plaintiffs and Marcus, defendant's agent. Further, it is undisputed that plaintiffs sought out financial investment strategies from a source that placed them in contact with defendant. In comparing these facts to the language of M.C.L. § 445.111; MSA 19.416(201), we find that the transaction in question cannot be defined as a home solicitation sale.
We believe one of the failing points of plaintiffs' argument is that the transaction in question, the offer to purchase, was not there given as required under the plain language of the act. Plaintiffs' contracts were not signed in the home at the time the sales presentation was given. In fact, the contracts were not signed until the following month. When determining the intent of the Legislature, a court must first look to the specific language of the statute. State Defender Union Employees v. Legal Aid & Defender Ass'n, 230 Mich.App. 426, 431, 584 N.W.2d 359 (1998). The fair and natural import of the terms employed, in view of the subject matter of the law, should govern. In re Wirsing, 456 Mich. 467, 474, 573 N.W.2d 51 (1998). If the language used is clear, then the Legislature must have intended the meaning it plainly expressed, and the statute must be enforced as written. Nation v. W.D.E. Electric Co., 454 Mich. 489, 494, 563 N.W.2d 233 (1997).
In the only published opinion, to date, addressing this act by an appellate court of this state, Brown v. Jacob, 183 Mich.App. 387, 454 N.W.2d 226 (1990), the buyer contacted a contractor who provided an on-site estimate for home repair. The buyer then signed a contract while the contractor was still in the buyer's home. This Court concluded that the transaction was a home solicitation sale, thus triggering the home solicitation sales act. The Supreme Court reversed the decision of this Court, 439 Mich. 865, 476 N.W.2d 156 (1991), citing the reasoning given by the dissenting member of this Court.
The Brown reasoning endorsed by the Supreme Court specifically considered the spirit and purpose of the act:
While there are differences between our act and those of other jurisdictions, the spirit and purposes of the [home solicitation] acts are the same....
*166 ... The legislative histories of these statutes indicate that their purpose was to protect consumers from intrusions into their homes by door-to-door and telephone solicitors. In those circumstances, the consumer has not yet prepared himself or herself for the negotiation process or braced himself or herself for the possibility of high-pressure sales tactics. The consumer is therefore in a uniquely vulnerable position and is susceptible to an unwanted sale of consumer goods. The home solicitation sales act serves to protect the consumer from such vulnerabilities. [Brown, supra, 183 Mich.App. at 394-395, 454 N.W.2d 226 (emphasis added).]
The fact that plaintiffs did not assent to the purchase agreements until after defendant's agent left plaintiffs' home and returned to Texas indicates to this Court that plaintiffs were not the vulnerable consumers that this act was created to protect. Because the purchase agreement was not there given at the place of the sales presentation, the transaction is outside the scope of the act.
Further, the actions of plaintiffs in seeking out investment avenues leads this Court to believe that defendant's actions were not solicitations inasmuch as defendant was responding to plaintiffs' inquiries. Again, the Brown dissent addressed a similar circumstance. In Brown, the buyer made the initial contact with the contractor. The dissent, as adopted by the Supreme Court, noted that the buyer sought out the contractor without any solicitation. Therefore, "[t]here was little danger that [the buyer] would be unduly pressured by the [contractor] since [the buyer] clearly initiated and controlled the negotiation process." Brown, supra, 183 Mich.App. at 395, 454 N.W.2d 226. We find that in the instant case plaintiffs' efforts to enhance their investment portfolios by contacting Patterson Strategy Organization, which then facilitated the meeting between plaintiffs and defendant's agent, constitute the same affirmative actions as those of the defendant buyer in Brown. As such, the June 1995 sales between defendant and Donna Patrick and Karen Patrick-Miller were not subject to the home solicitation sales act.
Next, plaintiffs claim the December 1995 coin purchase in which plaintiff Kevin Patrick gave verbal authorization to Marcus, over the telephone, to sign a sales contract in Donna Patrick's name was a home solicitation sale. Because the contract was never signed by Donna Patrick, plaintiffs contend, the statutory three-day cancellation period never commenced, allowing plaintiffs to cancel the sale at any time. We disagree.
As in the June 1995 purchases, the facts here support defendant's contention that there was no agreement or offer to purchase "there given" for the third coin purchase. MCL 445.111(a); MSA 19.416(201)(a). The record established that the initial conversation occurred in mid-December with the final agreement being reached in late December. Further, on the basis of the continuing relationship between the parties, we cannot say that the December 1995 transaction was one that was intended to be protected by the home solicitation sales act. There was no threat of intrusion from an in-home sales presentation or telephone solicitation. A relationship had already been fostered and nurtured through two previous sales transactions. We hold that the December 1995 transaction was not covered by the home solicitation sales act.
We note that plaintiffs' amended brief asserts that because neither Kevin nor Donna Patrick actually signed the December 1995 purchase agreement, no contract was ever formed, thus precluding application of the arbitration clause contained in the purchase agreement. However, the fact remains that plaintiffs did deliver a certified check in the amount of $8,535, the purchase price for the coin in question.
*167 Decisions regarding the legitimacy of an offer and acceptance revolve around the particular facts pertaining to the specific transaction; thus, precedents are of limited value in such instances. Farnsworth, Contracts (2d ed.), § 3.10, p. 138. In general, a court will look to the language of the proposal, then consider any prior communications coupled with the circumstances surrounding the bargain. Id.
Without dissecting the verbiage of the purchase agreement, we note acceptance may be implied from the party's conduct when the offer does not require a specific form of acceptance. St. Paul Fire & Marine Ins. Co. v. Ingall, 228 Mich.App. 101, 106, 577 N.W.2d 188 (1998); Pakideh v. Franklin Commercial Mortgage Group, Inc., 213 Mich.App. 636, 640, 540 N.W.2d 777 (1995). Considering plaintiffs' submission of payment to defendant coupled with the prior business dealings of the parties, we are convinced that the actions of these parties did create a valid contract of sale.
Affirmed.