**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0524n.06

No. 09-1711

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 18, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **LEE AND TERI MOROF**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiffs-Appellants*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **UNITED MISSOURI BANK, WARSAW**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |

BEFORE:    COLE, CLAY, Circuit Judges; KATZ, District Judge.[*]

   **COLE, Circuit Judge.**  Plaintiff-Appellants Lee and Teri Morof appeal the district court's

decision granting summary judgment to Defendant-Appellant United Missouri Bank ("UMB") and

denying summary judgment to the Morofs.  The Morofs claim the Bank wrongfully paid out

proceeds on several checks that were improperly endorsed.  The checks were written to purchase an

interest in four Michigan limited liability companies ("LLCs") that were to be formed by Edward

May.  The LLCs turned out to be part of a Ponzi scheme that May had orchestrated.  For the reasons

outlined below, we **AFFIRM** the decision of the district court.

---

   [*] The Honorable David A. Katz, United States District Judge for the Northern District of
Ohio, sitting by designation.

## I. BACKGROUND

From August 2006 to November 2006, Teri Morof[1] entered into Subscription Agreements to purchase an interest in four Michigan LLCs that were to be formed by May; Lee Morof entered into an agreement to purchase an interest in one such LLC. Prior to each investment, Teri Morof (and for the one, both Morofs) received a private offering memorandum, subscription agreement, and operating agreement from May. The offering memorandums outlined opportunities to purchase interests in LLCs that would be formed to handle various telecommunication projects. Teri Morof purchased a two percent interest in H.P. Hawaii LLC for $27,770; a four percent interest in H.P. Project Thirty One LLC for $34,520; a four percent interest in H.P. Hawaii Two LLC for $34,080; and a one percent interest in ATL Project One LLC for $28,500. Lee Morof and non-party Jerry Morof also purchased a one percent interest in ATL Project One LLC for $28,500.

At the times the relevant checks were issued, none of the subject LLCs were in existence; LLCs with similar names were subsequently formed in some instances. May endorsed all checks, despite the fact that they were made out to the relevant LLCs. The checks were posted to the Morofs' account at UMB and deposited in May's bank accounts. From February 2007 to July 2007, the Morofs received distribution payments on their various investments.

In November 2007, the Securities and Exchange Commission filed fraud charges against May, stemming from the phony telecommunication deals. On February 5, 2008, the Morofs filed a complaint against UMB seeking to hold it liable for the checks issued in connection with their

---

[1]Teri Morof was formerly known as Teri Cohodes and signed the relevant checks as such.

investments with May. Nine months later, both parties moved for summary judgment. The district court granted UMB's motion and denied the Morofs' motion.

The Morofs now appeal.

## II. ANALYSIS

Specifically, this appeal involves the Morofs' claim against UMB pursuant to § 4-401 of Michigan's Uniform Commercial Code, Mich. Comp. Laws § 440.4401, for UMB's charges against the Morofs' accounts based on several checks that the Morofs allege were not "properly payable." Assuming arguendo that the checks at issue were not properly payable, we agree with the district court that UMB satisfies the requirements of the intended-payee defense and therefore is not liable.

Before addressing the merits of the UCC claim and intended-payee defense, however, we first must satisfy ourselves that Michigan law is the appropriate law to apply in this case.

### A.    Choice of Law

Since the parties to this action are from two different states—Michigan and Missouri—choice-of-law issues are implicated. Yet because the district court applied Michigan law and the parties have not disputed its applicability, both before the district court and on appeal, the choice-of-law issue has been waived. *Pivnick v. White, Getgey & Meyer Co.*, 552 F.3d 479, 484 (6th Cir. 2009) ("[T]he issue [of] choice of law has been waived because the parties never disputed that Kentucky law should apply . . . ."). We therefore continue to apply Michigan law.

**B.      Merits**

*1.      Summary Judgment Standard*

This Court reviews de novo a district court's grant of summary judgment. *Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 431 (6th Cir. 2008). "Summary judgment should be granted when the moving party can 'show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is 'genuine' if a reasonable person could return a verdict for the non-moving party." *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "After the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587-88 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). All evidence and inferences therefrom are read in the light most favorable to the non-moving party. *Hutt v. Gibson Fiber Glass Prods., Inc.*, 914 F.2d 790, 792 (6th Cir. 1990).

*2.      UCC Claim for Recredit of Plaintiffs' Checking Account*

The Morofs claim that UMB charged their account for several checks that were not "properly payable" according to § 4-401 of Michigan's Uniform Commercial Code, Mich. Comp. Laws § 440.4401. Checks not endorsed in the name of a named payee are not properly payable. *Travco Corp. v. Citizens Fed. Sav. & Loan Ass'n of Port Huron*, 201 N.W.2d 675, 676 (Mich. Ct. App. 1972). In the context of fraudulent endorsements, an endorsement is in the name of a named payee if "(*i*) it is made in a name substantially similar to the name of that person or (*ii*) the instrument,

- 4 -

whether or not endorsed, is deposited in a depository bank to an account in a name substantially similar to the name of that person." Mich. Comp. Laws § 440.3405(3). Drawers of such checks retain a remedy against drawee banks.

> Under M.C.L. § 440.4401(3); . . ., a bank may charge against the account of its customer a check or item that is 'properly payable.' Implicit in this rule is the notion that a bank may not charge against the account of its customer a check or item that is *not* 'properly payable.' Accordingly, the drawer of a check has a remedy against the drawee bank for recredit of the drawer's account for the unauthorized payment of the check in the amount of the improper payment.

*Pamar Enterprises, Inc. v. Huntington Banks*, 580 N.W.2d 11, 16 (Mich. Ct. App. 1998) (citations omitted). Drawee banks, however, may assert the intended-payee affirmative defense.

> [T]he intended-payee defense provides that a drawee bank is not liable to the drawer of a check for an improper payment if (1) the proceeds of the check reach the person the drawer intended to receive them and (2) the drawer suffers no loss proximately caused by the drawee's improper payment.

*Id.* at 17. "This defense is intended to prevent the unjust enrichment of the drawer." *Id.*; *see also Meyer v. Comerica Bank*, No. 183645, 1996 WL 33324116, at *1 (Mich. Ct. App. 1996) (unpublished) ("The intended payee defense protects a bank which honored a check with no endorsement or an improper endorsement if the proceeds ultimately reached the payor's intended payee."); *Comerica Bank v. Mich. Nat'l Bank*, 536 N.W.2d 298, 300 (Mich. Ct. App. 1995) (adopting rule that "a bank may escape liability for honoring a check on a faulty or improper endorsement, or even with no endorsement, if the bank can prove that the intended payee received the proceeds of the check").

In this case, assuming arguendo that the checks at issue were not properly payable, there is no genuine issue as to any material fact that UMB satisfies the requirements of the intended-payee

defense and therefore is not liable as a matter of law. We address each prong of the intended-payee defense in turn.

    *a.*   *Proceeds Reached the Person the Drawer Intended*

We find that the proceeds of the Morofs' checks reached the intended payees for three reasons.

First, there is no aggrieved intended payee. There is no evidence to suggest that the Morofs were required, or even asked, to write checks to replace the five checks originally written to the LLCs, or otherwise paid twice for their investments. *Cf. Pamar*, 580 N.W.2d at 17 (intended payee received second check from plaintiff). Further, there is no evidence of any complaint from the LLCs that the Morofs's investment funds were not received.

Second, the Morofs were aware that they were investing in LLCs that had not yet been formed. The signed Subscription Agreements for each LLC indicated that the Morofs were purchasing interests in LLCs "to be formed." (Subscription Agreements, Dist. Ct. Docket No. 20 Ex. C, F, I, L, M.) Further, the Operating Agreements for each LLC indicated that Edward May was authorized to select and administer bank accounts on behalf of each LLC.

> The bank account or accounts of the Company shall be maintained in the banking institution or institutions selected by the Manager [Edward May]. All funds collected by the Company shall be deposited in those accounts and all checks or other instruments used to draw Company funds shall be signed by the Manager or his designee.

(Operating Agreements, Dist. Ct. Docket No. 20, Ex. D, G, J, N.) As the district court concluded, "[t]his documentary evidence refutes Plaintiffs' claim that the proceeds of the subject checks failed to reach the intended payee when they reached Edward May." (Op. and Order, Dist. Ct. Docket No.

33 at 14); *see also Meyer*, 1996 WL 33324116, at *1 ("Evidence that the proceeds were not ultimately used for their intended purpose is irrelevant because the evidence illustrated that the moneys were received by the intended payee.").

Finally, the Morofs received distributions on their investment checks, further refuting the notion that the intended payees did not receive the investment checks. (Dist. Ct. Docket No. 20, Ex. S, T, U, V.)

>   b.   *Drawer Suffered No Loss Proximately Caused by Drawee's Payment*

The second element of the intended-payee defense is that the drawer suffers no loss proximately caused by the drawee's improper payment. As the district court succinctly stated: "There is nothing to suggest that even if Defendant Bank had performed as Plaintiffs allege they should have, i.e., required Edward May to endorse Plaintiffs' checks in the name of the listed payee LLC, Plaintiffs would not have suffered the losses they seek to recover in this lawsuit." (Op. and Order, Dist. Ct. Docket No. 33 at 15.)

### III. CONCLUSION

For these reasons, we **AFFIRM** the district court's grant of summary judgment to UMB and denial of summary judgment to the Morofs.