*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WEB EQUITY HOLDINGS, LLC, and JRV HOLDINGS, LLC,

Plaintiffs-Appellants,

v

LEVEL ONE BANCORP, INC.,

Defendant/Third-Party Plaintiff-Appellee,

and

HUNTINGTON NATIONAL BANK, FIFTH THIRD BANK, N.A., JP MORGAN CHASE BANK, N.A., and COMERICA BANK AND TRUST, N.A.,

Third-Party Defendants-Appellees.

UNPUBLISHED
March 14, 2019

No. 342037
Macomb Circuit Court
LC No. 2016-003710-CB

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Plaintiffs, Web Equity Holdings, LLC, and JRV Holdings, LLC, appeal by leave granted[1] the trial court's stipulated order of dismissal resolving all remaining claims in this banking dispute. Plaintiffs' arguments on appeal arise from three of the trial court's prior orders: (1) the order granting summary disposition to defendant/third-party plaintiff Level One Bancorp, Inc.

---

[1] *Web Equity Holdings, LLC v Level One Bancorp, Inc*, unpublished order of the Court of Appeals, entered March 5, 2018 (Docket No. 342037). This Court dismissed plaintiffs' prior appeal by stipulation of the parties. *Web Equity Holdings, LLC v Level One Bancorp, Inc*, unpublished order of the Court of Appeals, entered January 30, 2018 (Docket No. 339662).

(Level One), and third-party defendant Huntington National Bank (Huntington); (2) the order denying plaintiffs' motion for reconsideration; and (3) the order granting Level One's motion to strike plaintiffs' jury demand. Plaintiffs argue on appeal that the trial court erroneously granted Level One summary disposition because Level One failed to establish both elements of the intended-payee defense and the trial court erroneously denied their motion for reconsideration because new evidence established that Huntington violated its own policies. Plaintiffs also argue that the trial court erroneously struck their jury demand because Level One failed to establish that they waived their right to a jury trial. We disagree with plaintiffs regarding the first two arguments and, therefore, decline to reach the third argument.

## I. BACKGROUND

This case arises from checks written by plaintiffs to be withdrawn and paid from their accounts at Level One. Paul E. Varchetti is the managing member of each plaintiff, and plaintiffs were banking customers of Level One. From 2014 to 2016, plaintiffs wrote several checks to Zachary Taymore, and to his businesses, ZT Contracting, First Choice, LLC, and Premier Tanning, LLC, as loans for construction projects. Plaintiffs claimed, however, that the checks were fraudulently endorsed and deposited into the accounts of Taymore or his businesses by unauthorized users (Gino Accettola or Shannon McNair), and then the proceeds were withdrawn from Taymore's accounts by Accettola or McNair as part of a Ponzi or other illicit financial scheme.

Plaintiffs filed suit against Level One for wrongfully honoring the checks under MCL 440.4401. In turn, Level One filed a third-party complaint against the depositary banks where the checks were cashed or deposited, which were Huntington, Fifth Third Bank, N.A. (Fifth Third), JP Morgan Chase Bank, N.A. (Chase), and Comerica Bank and Trust, N.A (Comerica). The various claims involving third-party defendants Fifth Third, Chase, and Comerica were dismissed and are not at issue on appeal. Accordingly, the only claims on appeal are those involving checks drawn by plaintiffs from their Level One accounts and deposited in Huntington accounts.

## II. ANALYSIS

### A. MOTION FOR SUMMARY DISPOSITION

Plaintiffs first argue that the trial court erroneously granted summary disposition based on the intended-payee defense because there were genuine issues of material fact regarding the two elements of this defense. We disagree.

The trial court granted summary disposition to Level One and Huntington under MCR 2.116(C)(10). This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. at 116. There is a genuine issue of material fact when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. *Id*.

Plaintiffs filed suit against Level One under MCL 440.4401, which provides in relevant part that "[a] bank may charge against the account of a customer an item that is *properly payable* from that account even though the charge creates an overdraft. An item is *properly payable* if it is authorized by the customer and is in accordance with any agreement between the customer and bank." MCL 440.4401(1) (emphasis added).

With regard to the relevant transactions in this appeal, plaintiffs wrote checks from their Level One checking accounts. Plaintiffs were, therefore, the "drawers" of the checks and Level One was the "drawee" or "payor bank." MCL 440.4104(h), MCL 440.4105(c). The checks were deposited into Taymore-related accounts at Huntington, making that bank the "depositary bank." MCL 440.4105(b). In turn, Huntington presented the checks to Level One for payment from plaintiffs' accounts and warranted that the checks were properly endorsed. MCL 440.3416(1)(b), MCL 440.4207(1).

It is at this point—when Level One honored the checks and transferred funds from plaintiffs' accounts to Huntington for deposit into the Taymore-related accounts—that plaintiffs allege Level One violated MCL 440.4401 by wrongfully honoring checks that contained forged or missing endorsements for deposit. A bank "may not charge against the account of its customer a check or item that is not properly payable." *Pamar Enterprises, Inc v Huntington Banks of Mich*, 228 Mich App 727, 735; 580 NW2d 11 (1998) (cleaned up). "Accordingly, the drawer of a check has a remedy against the drawee bank for recredit of the drawer's account for the unauthorized payment of the check in the amount of the improper payment." *Id*. at 736.

The trial court denied the first motions for summary disposition filed by Huntington and Level One under MCR 2.116(C)(8), concluding that plaintiffs stated a claim upon which relief could be granted. In its second motion for summary disposition, however, Level One moved for summary disposition under MCR 2.116(C)(10), and the trial court granted the second motion, concluding that the intended-payee defense applied. "[T]he intended-payee defense provides that a drawee bank is not liable to the drawer of a check for an improper payment if (1) the proceeds of the check reach the person the drawer intended to receive them and (2) the drawer suffers no loss proximately caused by the drawee's improper payment." *Pamar*, 228 Mich App at 737. This defense prevents the unjust enrichment of the drawer of the check. *Id*. "It is also justified where a bank's improper payment is not a cause of the drawer's injury flowing from the transaction." *Comerica Bank v Mich Nat'l Bank*, 211 Mich App 534, 538; 536 NW2d 298 (1995). The intended-payee defense is, therefore, available to a bank when defending an action for breach of presentment warranties. *Id*.

The first element of the intended-payee defense is that proceeds of the check reach the person to whom the drawer intended to receive them. *Pamar*, 228 Mich App at 737. Plaintiffs argue that a question of fact exists regarding whether the intended payee received the proceeds of plaintiffs' checks. Plaintiffs argue that Taymore did not personally deposit the proceeds in his companies' accounts nor did he direct the proceeds of the checks, meaning that the funds were not used by the intended payee for their intended purpose. The trial court disagreed with this argument, as do we.

In *Comerica*, the plaintiff, Comerica Bank, asserted that the defendant, Michigan National Bank, processed a cashier's check that was improperly endorsed. *Comerica*, 211 Mich

-3-

App at 537. Four individuals formed a partnership, South Central Investment Associates (South Central), and later, they formed a corporation, SCI Professional Associates, Inc. (SCI). *Id.* at 536. Comerica extended an unsecured line of credit to South Central and issued a cashier's check to South Central as the payee. In return, South Central executed a promissory note to Comerica. The intended purpose of the loan was to purchase an apartment building, and the purchase agreement clearly reflected that SCI was the buyer. *Id.* The cashier's check was endorsed "SCI Prof. Assoc., Inc.," and deposited into SCI's account with Michigan National. *Id.* SCI later assumed the loan, executed a promissory note for payment of the debt, and secured the note with two parcels of real estate owned by SCI. SCI subsequently failed to pay the note when it matured. *Id.* at 536-537. Rather than foreclosing on the real estate that secured the payment of the debt, Comerica informed Michigan National that it had improperly accepted and processed the cashier's check because the check was improperly endorsed. *Id.* at 537.

Michigan National refused to reimburse Comerica for the proceeds of the cashier's check, and Comerica filed suit against Michigan National for accepting the improperly endorsed check. *Id.* Michigan National denied liability because the proceeds of the cashier's check were received by the intended payee, South Central. *Id.* This Court determined that the intended-payee defense applied to bar Comerica's claims, stating:

> While it is true that South Central never endorsed the check and deposited the funds in its own account, it is undisputed that South Central received the check. The South Central partners, who were also the incorporators of SCI, directed the funds into SCI's account by endorsing the check with the corporation's name. Regardless of whether South Central literally endorsed the check and placed the funds in its own account or another account, South Central obviously intended to transfer the proceeds to SCI in order to purchase the apartment complex. Indeed, [Comerica] reviewed the purchase agreement, which clearly listed SCI as the purchaser. Therefore, [Comerica's] argument that it never intended for anyone but South Central to receive the proceeds of the loan is irrelevant for purposes of applying the intended-payee rule to the facts of this case. [*Id.* at 539.]

In this case, plaintiffs wrote various checks payable to Taymore's companies, Premier Tanning and ZT Contracting, and the checks were deposited at Huntington into the companies' accounts. Taymore stated that he did not endorse or deposit any of the checks into the Huntington accounts, and that he was the only named individual on these accounts authorized to do so. The Huntington branch manager, Lisa Riccobono-Coates, confirmed that all checks made payable to ZT Contracting were deposited into one of the two ZT Contracting accounts at Huntington. Additionally, Riccobono-Coates confirmed that all checks made payable to Premier Tanning were deposited into the Premier Tanning account at Huntington. Plaintiffs conceded in their response to Huntington's motion for summary disposition that the checks were negotiated through the intended payees' accounts and deposited into the appropriate accounts. At the motion hearing, plaintiffs did not dispute that the funds were credited to the intended payees' accounts.

Plaintiffs argue on appeal that the intended payees did not actually "receive" the proceeds from the Level One checks deposited at Huntington because the funds were subsequently withdrawn by Accettola as part of his illicit financial scheme. There is nothing, however, in

either *Pamar* or *Comerica* to suggest that any action taken *after* the funds of the check were deposited to the intended account somehow could negate receipt of those funds. Rather, this Court has held that whether the proceeds were ultimately used for their intended purpose is irrelevant if the proceeds were deposited into the proper account. See, e.g., *Abbonizio v Bank of America, NA*, unpublished per curiam opinion of the Court of Appeals, issued June 1, 2017 (Docket No. 330022), p 6.[2] We conclude that the trial court correctly determined that no question of fact existed regarding the first element of the intended-payee defense because there was no dispute that funds from the checks written to ZT Contracting and Premier Tanning were properly deposited into their respective accounts at Huntington.

Plaintiffs also argue that the trial court erred in relying on Taymore's failure to complain about the purported unauthorized use of the ZT Contracting account in determining that ZT Contracting received the funds as a matter of law. Sheri L. Lambert, the Huntington vice president of risk operations, stated that, under the account agreements, customers agreed to examine their periodic account statements and to report any errors to Huntington within 30 days. Lambert confirmed that no claims were made by Taymore regarding the ZT Contracting accounts at Huntington. An assistant-vice-president and manager of Huntington, Paula Cordle, stated that all periodic statements for ZT Contracting were delivered by regular mail or business-online delivery for the periods at issue. Similarly, Lambert confirmed that no claims were made regarding Premier Tanning's account, and Cordle stated that all periodic statements for Premier Tanning were delivered via regular mail or business-online delivery, none of which were returned as undelivered. Based on this record evidence, we conclude that the trial court did not err in determining that ZT Contracting and Premier Tanning received the intended funds, given the failure to provide Huntington notice of any unauthorized use of the accounts.

The second element of the intended-payee defense is that the drawers (plaintiffs) suffer no loss proximately caused by the drawee's (Level One's) improper payment. *Pamar*, 228 Mich App at 737. Plaintiffs claim that Level One is strictly liable for wrongfully honoring the checks, and that the wrongful honor of the checks with fraudulent or missing endorsements was a proximate cause of their damages. We disagree.

The Michigan Supreme Court stated:

This Court has defined proximate cause as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred. An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability; unless it is found that the intervening act was reasonably foreseeable. If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law. [*Black v Shafer*, 499 Mich 950, 951; 879 NW2d 642 (2016) (cleaned up).]

---

[2] Although unpublished opinions are not binding under the rule of stare decisis, MCR 7.215(C)(1), they may be considered instructive or persuasive, *In re Application of Ind Mich Power Co*, 275 Mich App 369, 380; 738 NW2d 289 (2007).

In *Abbonizio*, an attorney deposited settlement checks into his client-trust-fund (IOLTA) account, but failed to distribute the proceeds to the plaintiffs. *Abbonizio*, unpub op at 1. Only one plaintiff of the three signed powers-of-attorney allowing the attorney to endorse the checks to deposit them into the IOLTA account. *Id*. at 3-4. This Court determined that the plaintiffs intended that the settlement funds be credited to the attorney's IOLTA account, and therefore, the settlement funds were received by the intended payee. *Id*. at 6-7. Regarding proximate cause, the plaintiffs argued that, had the defendant bank refused to negotiate the checks due to the unauthorized signature of the plaintiffs' attorney, the funds would not have been deposited in the IOLTA account, and therefore, the funds would have been inaccessible to the attorney for fraud. *Id*. at 7.

This Court disagreed, stating that "[t]he check was placed into the IOLTA account; at this juncture the banks had no control regarding the distribution of the proceeds. The loss incurred by [the] plaintiffs is the immediate, direct and proximate cause of [the attorney's] fraud and wrongdoing." *Id*. The defendant bank's negotiation or acceptance of the check was not a proximate cause of the harm suffered by the plaintiffs. *Id*. "Rather, it was [the attorney's] misuse and fraud in withdrawing the entirety of the funds from the IOLTA account that constituted an intervening cause of the injury, breaking the chain of causation and alleviating [the defendant banks'] liability." *Id*.

This case presents similar circumstances. Plaintiffs argue that Level One's wrongful honor of the checks was a proximate cause of their damages. Plaintiffs, however, intended that funds from their Level One accounts be deposited to Taymore's companies' accounts at Huntington, and this was done. Whether Huntington should have permitted Accettola or McNair to endorse the checks for deposit to Taymore's companies' accounts is irrelevant as to whether plaintiffs' intentions to deposit their funds in those accounts were honored by Level One and Huntington. Once this was accomplished, Level One had no control regarding *subsequent* withdrawal or other use of the funds from the Huntington accounts. Plaintiffs' alleged injury arose from the *subsequent* actions by Accettola and McNair when they purportedly withdrew the funds without Taymore's knowledge or permission. It was the *subsequent* withdrawals—not the *initial* deposits or negotiations—that were the immediate, direct, and proximate cause of plaintiffs' alleged injuries. And, whether Huntington shared any of the fault involving the withdrawals is not relevant in this lawsuit, as (1) it is not relevant to Level One's actions with respect to the original deposits, and (2) plaintiffs chose not to sue Huntington directly. Because Accettola's and McNair's purportedly unauthorized withdrawal and misuse of the funds broke the chain of causation involving Level One, the trial court properly granted Level One summary disposition because the intended-payee defense applied against plaintiffs' claims. Similarly, the trial court properly granted summary disposition to Huntington on Level One's third-party complaint.

Although argued in the trial court and addressed by the trial court in its opinion and order, plaintiffs do not argue on appeal that summary disposition was premature because discovery was ongoing. Although discussed by Level One on appeal, we consider this issue abandoned. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008).

B. MOTION FOR RECONSIDERATION

Next, plaintiffs argue that the trial court abused its discretion in denying plaintiffs' motion for reconsideration because newly discovered evidence established that Huntington violated its own antimoney-laundering policies. We disagree.

This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018). An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes. *Id*. The party moving for reconsideration must demonstrate "a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). It is within the trial court's discretion to grant reconsideration to correct mistakes, preserve judicial economy, and minimize the costs to parties. *Sanders*, 323 Mich App at 264-265.

Plaintiffs argue on appeal that the trial court abused its discretion in disregarding evidence that Huntington violated its own policies by allowing Accettola and McNair to make deposits and withdrawals from the accounts when they were not authorized users. Plaintiffs argue, therefore, that a question of fact existed regarding whether the intended-payee defense applied.

To support its motion for reconsideration, plaintiffs attached various documents demonstrating that Taymore was the sole authorized user for the Huntington accounts. Plaintiffs alleged that when Huntington allowed Accettola and McNair to deposit and withdraw from the accounts, it violated a provision of its business-account disclosures, which provided that people designated as authorized signers on the signature cards may withdraw funds or authorize transactions, but Taymore was the only person on the signature card. Meanwhile, Taymore testified at his deposition that Accettola asked Taymore to change the mailing address of one of the accounts because Accettola wanted to monitor it, and Taymore complied.

Plaintiffs' motion for reconsideration relied on Taymore's testimony to assert that Level One remained liable because Huntington allowed unauthorized users to withdraw funds from the accounts of the intended payees after the funds were deposited. The trial court did not abuse its discretion in determining that Taymore's testimony was contrary to plaintiffs' assertion that Accettola manipulated the accounts without Taymore's knowledge. Taymore said that he changed the mailing address of one account so Accettola could monitor it. Plaintiffs raise issue on appeal with the trial court's language in the opinion and order that Taymore "induced" plaintiffs to issue the checks to Taymore's companies, when there was no evidence presented that Taymore had knowledge of the checks. This choice of words by the trial court does not rise to the level of an abuse of discretion where the evidence firmly established that the funds reached the accounts of the intended payees.

Plaintiffs also assert that the trial court abused its discretion in determining that Accettola's fraud occurred after the checks were deposited, because Accettola deposited the checks without Taymore's knowledge. Again, this does not contradict the evidence that the funds reached the intended payee. The trial court noted that plaintiffs were "frustrated" that the funds were not used in the manner represented by Taymore when plaintiffs were "induced" to

write the checks, but this result did not preclude defendants from relying on the intended-payee defense. We agree.

Because the evidence firmly established that the intended-payee defense applied, and the newly acquired evidence produced by plaintiffs in support of its motion for reconsideration did not negate this defense, the trial court did not abuse its discretion when it denied plaintiffs' motion for reconsideration. Finally, because we affirm the trial court's orders granting summary disposition to Level One and Huntington and denying plaintiffs' motion for reconsideration, we need not address plaintiffs' argument that the trial court erroneously granted Level One's motion to strike plaintiffs' jury demand.

Affirmed. Appellees, having prevailed in full, are entitled to tax costs under MCR 7.219.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron