MICHIGAN TRACTOR AND MACHINERY COMPANY v ELSEY

Docket No. 166518. Submitted January 9, 1996, at Lansing. Decided March 29, 1996, at 9:00 A.M.

Michigan Tractor and Machinery Company brought an action in the Lapeer Circuit Court against Jocham Excavating, Inc., seeking payment of money owed by Jocham as the result of its default of two lease agreements. In December 1990, the court, Martin E. Clements, J., entered a consent judgment for the plaintiff. In May 1991, the plaintiff filed and served an affidavit and writ of garnishment on Wesjon Construction, Inc., with respect to funds allegedly owed by Wesjon to Jocham for retainage fees incurred in construction work. Wesjon eventually tendered to the court in satisfaction of the writ of garnishment an amount representing an agreed-upon settlement of all of Jocham's claims for unpaid fees. Lee L. Elsey and Gary A. Colett, as trustees for the L.T. Elsey Profit Sharing Plan and Trust, were allowed to intervene as defendants, in order that they might assert a claim that they had a prior perfected security interest in the funds that had been tendered by Wesjon. The intervening defendants claimed a superior interest on the basis of a December 1990 assignment by Jocham to them of "all retainage fees due and owning" to Jocham from Wesjon and their April 1991 recording of the financing statement that describe the collateral as "retainage fees due (Jocham) from Wesjon." The court found that the December 1990 assignment and April 1991 security agreement did not cover after-acquired property and that the retainage fees were not due at the time of the assignment, held that the plaintiff had priority to the funds as the holder of a perfected garnishment lien, and ordered that the funds tendered by Wesjon, after being reduced by the amount of an attorneys' fee lien, be paid to the plaintiff. The intervening defendants appealed.

The Court of Appeals held:

1. The filing and serving of the affidavit and writ of garnishment made the plaintiff a lien creditor within the meaning of the Uniform Commercial Code and gave it a perfected security interest in all funds then payable or to become payable by Wesjon to Jocham.

2. The December 1990 assignment and April 1991 financing statement clearly gave the intervening defendants a security interest in

any retainage fees due and owning to Jocham by Wesjon on the day of the assignment superior to the creditor lien interest of the plaintiff. However, the trial court did not err in finding that the retainage fees were not due and owing on the date of the assignment. Accordingly, the funds tendered by Wesjon represented fees that became due and owing after the December 1990 assignment.

3. In the absence of a clause providing for security in after-acquired collateral, a perfected security interest in after-acquired property will arise, if at all, only where the security agreement would alert an ordinary creditor that a security interest in after-acquired property was intended and was being asserted. Because neither the December 1990 assignment nor the April 1991 financing statement contains either a specific clause with respect to after-acquired collateral or language that would alert a reader that a security interest in after-acquired collateral was intended, the intervening defendants did not have a perfected security interest in the funds tendered by Wesjon.

4. The trial court properly placed on the intervening defendants the burden of going forward with the proofs with respect to establishing their claim that they had a priority of interest in the tendered funds on the basis of the December 1990 assignment.

Affirmed.

1. SECURED TRANSACTIONS — SECURITY AGREEMENT — PERFECTION OF SECURITY INTEREST.

In the absence of a clause providing for security in after-acquired collateral, a perfected security interest in after-acquired property will arise, if at all, only where the security agreement would alert an ordinary creditor that a security interest in after-acquired property was intended and was being asserted.

2. TRIAL — BURDEN OF PROOF — BURDEN OF GOING FORWARD.

The burden of persuasion never shifts during trial, but the burden of going forward may shift from one side to the other during trial as evidence is introduced by the respective parties.

*Robert K. Zinn,* for the plaintiff.

*Cox, Hodgman & Giarmarco* (by *Barry L. King*), for the intervening defendants.

Before: MARKMAN, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM. Intervening defendants appeal as of right the May 3, 1993, judgment of the trial court

granting plaintiff $25,079.94 plus interest in partial satisfaction of a judgment based on the debt of defendant Jocham Excavating, Inc., to plaintiff. Jocham Excavating owed intervening defendants $50,000 on a 1987 promissory note and owed plaintiff $40,000 after defaulting on two lease agreements. Garnishee defendant Wesjon Construction, Inc., owed Jocham for fees incurred in construction work. Jocham assigned its interest in garnishee defendant Wesjon's debt to intervening defendants in exchange for a release from a mortgage securing the $50,000 and for a promise of a loan for another $50,000. The trial court held that intervening defendants' security agreement with Jocham did not cover after-acquired property and that, therefore, intervening defendants were unsecured for after-acquired property. Moreover, the trial court held that plaintiff had priority as a garnishment lien holder over garnishee defendant Wesjon's debt to Jocham because this debt was after-acquired property because it had not become due until after defendant assigned it to intervening defendants.

We agree with the trial court that the dispute in this case is fundamentally whether plaintiff has a superior interest to the funds in question by virtue of its judgment-garnishment lien or whether intervening defendants have a superior interest because of a security interest.

Although this is not an easy case, after consideration of the issues raised by intervening defendants on appeal, we do not believe that the trial court erred in denying intervening defendants' motion for summary disposition. Nor do we believe that it clearly erred in the factual findings underlying its verdict for plaintiff.

Plaintiff was a creditor who acquired a lien through garnishment of garnishee defendant because of garnishee defendant's debt to defendant. Therefore, plaintiff was a "lien creditor" under the Uniform Commercial Code, UCC 9-301(3), MCL 440.9301(3); MSA 19.9301(3). See *Dubey & Sons, Inc v Macomb Contracting Corp*, 97 Mich App 553, 555, 565; 296 NW2d 582 (1980). "Michigan follows the general rule that a garnishment lien attaches upon service of the writ." *Mary v Lewis*, 399 Mich 401, 411; 249 NW2d 102 (1976). Here, plaintiff filed and served its affidavit and writ of garnishment in May 1991. An unperfected security interest is subordinate to the interest of a person who becomes a lien creditor before the security interest is perfected. UCC 9-301(1)(b), MCL 440.9301(1)(b); MSA 19.9301(1)(b). However, one who becomes a lien creditor after another's security interest is perfected is subordinate to that perfected security interest. *Dubey, supra* at 565. Thus, whether plaintiff's garnishment lien was superior to intervening defendants' security interest turns on when the latter's security interest in the retainage fees was perfected.

UCC 9-302(1), MCL 440.9302(1); MSA 19.9302(1), requires a party to file a financing statement to perfect a security interest. Under UCC 9-303(1), MCL 440.9303(1): MSA 19.9303(1), "[a] security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken." UCC 9-203(2), MCL 440.9203(2); MSA 19.9203(2), states: "A security interest attaches when it becomes enforceable against the debtor with respect to the collateral." Attachment occurs when all

the events listed in subsection 1 of UCC 9-203, MCL
440.9203(1); MSA 19.9203(1), have taken place:

> (a) The collateral is in the possession of the secured
> party pursuant to agreement, or the debtor has signed a
> security agreement which contains a description of the col-
> lateral . . . ; and
> (b) Value has been given; and
> (c) The debtor has rights in the collateral.

Here, intervening defendants gave defendant value in
exchange for defendant's December 1990 assignment
of "all retainage fees due and owing to [defendant]
from [garnishee defendant]." Intervening defendants
recorded a financing statement in April 1991 that
described the collateral as "[r]etainage fees due
[defendant] from [garnishee defendant]." Therefore,
intervening defendants perfected a security interest in
retainage fees that were "due and owing" at the time
of the December 1990 assignment.

Contrary to intervening defendants' assertion, there
was contradictory evidence concerning to whether
the retainage fees were "due and owing" at the time
of the assignment. In answers to interrogatories,
defendant claimed that $157,761.29 in retainage fees
was due in December 1990. However, defendant also
admitted in the answers to interrogatories that there
were conditions precedent to this debt becoming due.
There was no dispute that these conditions had not
been met at the time of the December 1990 assign-
ment. Further, in a garnishee disclosure filed in June
1991, garnishee defendant stated only that defendant
"may be due money for certain subcontracts." In its
June 1992 response to interrogatories, garnishee
defendant stated that the amount due defendant was

"unknown" because certain subcontracts had not been "finalled out." On the basis of the evidence that the retainage fees were not "due and owing" at the time of the December 1990 assignment to intervening defendants, the trial court did not err in denying intervening defendants' motion for summary disposition. Nor did the trial court clearly err in finding that the retainage fees were not due at the time of the December 1990 assignment because the conditions precedent had not yet been fulfilled.

Intervening defendants next argue that the absence of an after-acquired property clause in the December 1990 assignment did not void their security interest in after-acquired collateral. They argue that the modern trend is to recognize a continuing security interest in inventory and accounts receivable, even absent an after-acquired property clause. Plaintiff counters that a security agreement in after-acquired property can attach to such collateral only when the security agreement includes an after-acquired property provision.

UCC 9-204, MCL 440.9204; MSA 19.9204, provides that a security agreement may protect an obligation with after-acquired property. Generally, article 9 of the UCC validates after-acquired property provisions in security agreements. *Sears, Roebuck & Co v Detroit Federal Savings & Loan Ass'n*, 79 Mich App 378, 384; 262 NW2d 831 (1977). Here, intervening defendants' financing statement identified the collateral securing the debt only as "[r]etainage fees due [defendant] from [garnishee defendant]."

Below, the trial court followed *In Re Taylored Products, Inc*, 5 UCC Rep Serv 286, 290-291 (WD Mich, 1968), in which the federal referee in bank-

ruptcy held that an after-acquired property clause in the security agreement was essential to allow after-acquired property of inventory to become collateral for a present obligation. See also *In Re Paine*, 15 CBC 621, 624-630 (WD Mich, 1978). Here, there was no explicit after-acquired property clause in intervening defendants' security agreement. Therefore, under *Taylored Products*, intervening defendants' security agreement would not include after-acquired property.

However, in *American Employers Ins Co v American Security Bank*, 241 US App DC 379, 387; 747 F2d 1493 (1984), the court held that it is reasonable to read a security agreement granting an interest in all inventory or receivables to include after-acquired inventory or receivables. See also *In Re Sims Office Supply, Inc*, 83 Bankr 69, 73; 5 UCC Rep Serv 2d 1489 (MD Fla, 1988), which identified this rule as the modern trend. In determining the scope of a security agreement, the *American Employers* Court indicated that the relevant issues were (1) "whether the security agreement can be read *objectively* to include after-acquired collateral"; and (2) "whether the parties to the agreement intended to include after-acquired property in their agreement." *American Employers, supra* at 386. "The purpose of the financing statement is to put the creditor on notice of a potentially superior security interest so that he can consult the security agreement and possibly the filing creditor to determine whether the collateral is indeed included." *Id.* For this reason, a security agreement should reasonably identify the collateral. See Official Comment to UCC 9-110, MCL 440.9110; MSA 19.9110.

The Court of Appeals for the Ninth Circuit analyzed the conflict between the positions expressed in

*Taylored Products* and *American Employers* and explained that the rationale for the *American Employers* line of cases is that "inventory is constantly turning over, and no creditor could reasonably agree to be secured by an asset that would vanish in a short time in the normal course of business." *Stoumbos v Kilimnik*, 988 F2d 949, 955 (CA 9, 1993).

Here, we note that plaintiff concedes on appeal that retainage arrangements are "common in the construction industry" and that such fees are "a contingent account receivable."[1] However, there is no indication that the security agreement would alert an ordinary creditor to the claim that retainage fees not "due and owing" at the time of the assignment were included in the assignment. Therefore, the security agreement cannot objectively be read to inform the ordinary creditor that after-acquired retainage fees (i.e., retainage fees that became due after the December 1990 assignment) were also collateral securing defendant's debt to intervening defendants. Thus, even under *American Employers*, intervening defendants' security agreement would not be construed to include after-acquired property.

Because the same result obtains under both *Taylored Products* and *American Employers*, we need not decide which represents the correct statement of the law. However, we note that there may be merit to the less mechanistic test of *American Employers* because it comports better with general

---

[1] The trial court did not make a finding regarding whether retainage fees from a single debtor (here, garnishee defendant) would belong in the same category of collateral as accounts receivable and inventory or whether an ordinary creditor would recognize that retainage fees belong to this category of collateral.

contract principles of looking to the totality of a contract and interpreting it in the context of standard trade practices.

Accordingly, the trial court properly ruled that the security agreement did not cover after-acquired retainage fees. As a result of that conclusion, plaintiff's interest was superior to that of intervening defendants with respect to garnishee defendant's debt to defendant under UCC 9-301, MCL 440.9301; MSA 19.9301, because plaintiff was a lien creditor while intervening defendants were only unperfected creditors with respect to the after-acquired fees.

Finally, intervening defendants argue that the trial court erred with respect to the burden of proof at the February 12, 1993, hearing. Specifically, the trial court stated that intervening defendants had "obligations with respect to any contracts or agreement that may exist between [defendant] and [garnishee defendant]" and that plaintiff had "obligations with respect to his garnishment." The burden of persuasion never shifts during trial from the plaintiff to the defendant. *Kar v Hogan*, 399 Mich 529, 539; 251 NW2d 77 (1976). Only the burden of going forward may shift from one side to the other at various times during the trial as evidence is introduced by the respective parties. *Palenkas v Beaumont Hosp*, 432 Mich 527, 550; 443 NW2d 354 (1989). Here, there is no indication that the trial court intended to shift the burden of persuasion. Moreover, the trial court's decision to divide the burdens of production, i.e., placing the burden on plaintiff with respect to the garnishment while placing the burden on intervening defendants with respect to demonstrating the priority of their interest based on the assignment from defendant, seems reasonable

under the circumstances here. Further, intervening defendants have failed to demonstrate any prejudice to their claim from bearing the burden of production with respect to the obligations between defendant and garnishee defendant.

For these reasons, we find no clear error in the trial court's fact finding or error requiring reversal in the verdict rendered.

Affirmed.