PER CURIAM.
Plaintiff, System Soft Technologies, L.L.C., appeals by leave granted the trial court’s order granting intervenor, Summit Community Bank’s (Summit’s), motion to intervene, quashing plaintiff’s writs of garnishment, and enjoining plaintiff from taking any other collection action against defendant, Artemis Technologies, Inc. Because Summit was a perfected, secured creditor of defendant with higher priority than plaintiff and had declared its loans to defendant in default, accelerated the balances owed, and entered into a forbearance agreement with defendant, and because plaintiff’s argument pertaining to the doctrine of marshaling is not ripe for this Court’s review, we affirm.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The basic facts of this case are not in dispute. Plaintiff is a limited liability company with its principal place of business in Florida, and defendant is a Michigan corporation. On December 1, 2008, plaintiff and defendant entered into a contract pursuant to which plaintiff provided employees to defendant to perform information technology services. When defendant failed to make the required payments under the contract, plaintiff obtained a default judgment against defendant in Florida in the amount of $147,398.63.
*645 On July 26, 2011, plaintiff filed a notice of entry of foreign judgment in the Ingham Circuit Court. Defendant filed an objection to the notice, arguing that the Florida court lacked personal jurisdiction over it, rendering the default judgment unenforceable. Plaintiff disputed defendant’s claim that the Florida court lacked personal jurisdiction over defendant. The trial court temporarily stayed enforcement of the Florida judgment and ordered defendant to petition the Florida court to determine whether that court had personal jurisdiction over defendant to issue the default judgment. The trial court also ordered defendant to post a surety bond in the amount of $147,398.63. The court further ordered that if defendant failed to timely post the bond, “the Florida Judgment will be entered as a Judgment of this Court without further notice or hearing, and Plaintiff may execute the Florida Judgment in accordance with Michigan law.” It is undisputed that defendant failed to timely post the bond.
On February 7, 2012, the trial court signed subpoenas requiring John W Gilkey, II, and Olubbunmi Ak-inyemiju, corporate representatives of defendant, to appear for creditor’s examinations. The subpoenas contained a restraining order prohibiting defendant from transferring its assets. On February 16, 2012, defendant filed an emergency motion to quash the subpoena issued to Akinyemiju and to allow defendant to pay its regular employee-related expenses and expenses incurred in the ordinary course of business that were necessary to continue operations. On February 24, 2012, the trial court entered an order quashing the subpoena issued to Akinyemiju and modifying the subpoena issued to Gilkey to allow defendant to make payments and transfer assets “in the ordinary course of business[.]”
*646 On April 4, 2012, plaintiff issued writs of garnishment against several of defendant’s customers, i.e., defendant’s accounts receivable, following which Summit filed a motion to intervene and a motion for a temporary restraining order quashing execution on the writs. Summit argued that it is a perfected, secured creditor of defendant pursuant to loan agreements, promissory notes, and security agreements for both a term loan and a line of credit. Summit asserted that defendant owed it approximately $422,000 and that it had declared defendant in default, provided a notice of default, and preserved its rights to accelerate the maturity of the loans and to give notice to account debtors to direct future payments to Summit. Summit argued that the trial court should quash plaintiffs writs of garnishment because Summit had a perfected security interest in all of defendant’s assets, including its accounts receivable, and, accordingly, Summit had priority over unsecured creditors such as plaintiff. Summit rejected the notion that it had to enforce its security interest in order to have priority over plaintiff. The trial court entered a temporary restraining order enjoining plaintiff from serving the writs of garnishment or attempting to execute on the writs for a period of 14 days.
In response to Summit’s motion, plaintiff argued that it had discovered during Gilkey’s creditor’s examination that defendant is making its full monthly loan payments to Summit and that defendant has approximately $700,000 in total assets. Plaintiff asserted that Summit had repeatedly threatened to execute its security interest if plaintiff did not accept defendant’s settlement offer. Plaintiff contended that on numerous occasions it requested Summit to state in specific detail the actions that it had taken to enforce its security interest against defendant, but that Summit had failed *647 to respond. Plaintiff argued that defendant and Summit colluded to prevent plaintiff from collecting on its default judgment. Plaintiff requested that the trial court order Summit to marshal defendant’s other assets before seeking to execute its security interest on the accounts receivable that are the subject of plaintiffs writs of garnishment.
Defendant filed a brief in support of Summit’s motion to intervene. Defendant maintained that Gilkey’s testimony during the creditor’s examination made clear that liquidation of defendant’s assets would likely result in only $60,000 to $80,000. Defendant asserted that it owed Summit approximately $422,000 and that it owed state and federal taxes totaling approximately $295,000. Defendant contended that Summit held a perfected first-priority lien on defendant’s assets and that the state and federal taxing authorities held a perfected second-priority lien on those assets. Defendant argued that absent an order enjoining plaintiff from executing on the writs of garnishment directed to defendant’s customers, plaintiff’s collection activities would result in defendant’s loss of future revenue. Defendant maintained that the only way that its unsecured creditors, such as plaintiff, would get paid is if it is able to stay in business, continue to work with its customers, and generate new revenue. Finally, defendant contended that if it was forced to close and liquidate its assets, Summit would likely recover only 20 percent of what it was owed, and plaintiff and the state and federal taxing authorities would recover nothing.
Following a hearing on Summit’s motion, the trial court entered an order granting Summit’s motion to intervene, quashing plaintiffs writs of garnishment, *648 and enjoining plaintiff from taking further collection action against defendant. The trial court stated, in relevant part:
We now turn to the question of what are we going to do with the existing writs? The Court would conclude that it doesn’t believe that marshaling applies here because prior to the issuance of the writs, [plaintiff] was not a lienholder. They [sic] were a general unsecured creditor.
[Counsel for plaintiff] would argue that upon filing the writs, he would become a lienholder to those limited funds that are subject to the writ, but at the time the writ was issued, they [sic] were not [a] lienholder. And I don’t really know if in this instance whether marshaling applies. It would seem to me there would be several accounts out there and a lienholder in one account had priority and also might have been on three or four other accounts, and then there is a junior lienholder that only has one, and there is sufficient monies in the other accounts to put something toward the junior had they decided to put that money in that account. We don’t have that situation here. It appears that we have a workout agreement after default on the loan that has allowed [defendant] to stay in business.
As the bank is monitoring the deposits, [defendant] apparently is still paying its expenses, has 15 employees, . . . and has been making payments. They’ve reduced the amount. . . .
The Court isn’t in a position to determine today the value of the assets of [defendant]. We—there seems to be little dispute over the fact that ahead of [plaintiff] at a minimum is Summit who’s perfected [and] the federal/state taxing authorities. So it looks like those numbers, even taking the numbers presented here today, um, are close, so I don’t know if there would be any money that would go through to [plaintiff].
And I say that because I think in today’s economy, with the nature of the economy as it is, [plaintiff] is saying, well, they could foreclose, and the result would be putting these 15 people out of work when, in fact, there is little likelihood *649 in the Court’s opinion based on the information I have today that [plaintiff] will be getting anything anyways.
... It would be different if, you know, we had some substantial assets, but I don’t see that here.
And there was an argument about the liquidation, and I’ve already talked about that. That doesn’t appear as if there is sufficient funds, but I think [plaintiff] would be entitled to have an evidentiary hearing on this, if they [sic] so desire to, I guess, go back over the results of the debtor’s exam. I don’t think the debtor’s exam would take the place of an evidentiary hearing, frankly, so if you wanted— [plaintiff] wanted to come in and challenge the asset listing.
I think the compelling—two compelling things for me are, A, the perfected security agreement that’s in place for these same funds. And, B, that the bank had already declared a default on the loan and was trying to work it out to keep [defendant] in business because as [Summit] at least indicated . .. today, that it’s not in their best interest for [defendant] to go out of business. I don’t think it’s [plaintiffs] best interest for them to go out of business when, in fact, it doesn’t appear as if there would be any funds even if there was a total foreclosure.
I think it’s likely that Summit would prevail on their request as a priority lienholder. So let me make that on the record too; they’re a priority lienholder, and I think it’s likely they would prevail on this. So I think the likelihood on them prevailing in this matter is great. I think there is irreparable harm to potential employees of [defendant] if they’re displaced in their job while this matter is pending.
So for those reasons, I’m going to grant Summit Bank’s motion to intervene. I’m going to quash the writs of garnishment that have been issued, and I’m going to continue the injunction in this matter until we have an evidentiary hearing.
... So I would think that would leave it up to [plaintiff] if they [sic] wish to have an evidentiary hearing; that we’d give them [sic] one as soon as practicable.
*650 Plaintiff now appeals the trial court’s ruling.
II. STANDARDS OF REVIEW
This Court reviews for an abuse of discretion a trial court’s decision whether to quash a writ of garnishment. Cortez v Int’l Union, United Auto, Aircraft & Agricultural Workers of America (UAW-CIO), 339 Mich 446, 453; 64 NW2d 636 (1954). We also review for an abuse of discretion a trial court’s decision to grant injunctive relief. Taylor v Currie, 277 Mich App 85, 93; 743 NW2d 571 (2007). “An abuse of discretion occurs when a trial court’s decision is not within the range of reasonable and principled outcomes.” Id. In addition, we review equitable issues de novo. Tkachik v Mandeville, 487 Mich 38, 44-45; 790 NW2d 260 (2010).
III. LEGAL ANALYSIS
Plaintiff argues that the trial court erred by quashing its writs of garnishment and enjoining it from taking further collection activities against defendant. Plaintiff does not contest that Summit, a perfected, secured creditor, has higher priority than plaintiff, a mere judgment creditor, but asserts that Summit was required to foreclose on its security interest in order to prevent plaintiff from collecting on its debt.
In support of its argument, plaintiff relies on MCR 3.101(E)(3)(e), MCR 3.101(G)(1)(d), and MCR 3.101(J)(2). MCR 3.101(G)(1)(d) concerns the liability of garnishees:
(1) Subject to the provisions of the garnishment statute and any setoff permitted by law or these rules, the garnishee is liable for
[[Image here]]
*651 (d) all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendantL]
MCR 3.101(J)(2) concerns payment of periodic garnishments: “For periodic garnishments, all future payments shall be paid as they become due as directed by the court pursuant to subrule (E)(3)(e) until expiration of the garnishment.” MCR 3.101(E)(3)(e) concerns the manner of payment:
(3) The writ shall direct the garnishee to:
[[Image here]]
(e) in the discretion of the court and in accordance with subrule (J), order the garnishee either to
(i) make all payments directly to the plaintiff or
(ii) send the funds to the court in the manner specified in the writ.
Summit correctly argues that these provisions merely set forth the process for postjudgment garnishment and do not address the specific question at issue in this appeal, i.e., whether the trial court properly quashed plaintiffs writs of garnishment when Summit elected not to foreclose on its security interest. Thus, plaintiffs reliance on these court rules is misplaced.
Plaintiffs reliance on Cortez, 339 Mich 446, and Brookdale Cemetery Ass’n v Lewis, 342 Mich 14; 69 NW2d 176 (1955), is likewise misplaced because those cases involved prejudgment garnishment, as opposed to postjudgment garnishment, and have no bearing on the legal issue presented in this appeal. This Court was unable to locate any Michigan precedent addressing a junior creditor’s rights when a senior creditor refuses to execute on its security interest. In fact, several law *652 review articles indicate that article 9 of the Uniform Commercial Code (UCC), which concerns secured transactions, fails to specify a result when a senior creditor fails to enforce its interest while a junior creditor seeks to enforce a lien. See, e.g., Note, Secured creditors holding lien creditors hostage: Have a little faith in revised article 9, 81 Ind L J 733 (2006). Article 9 of the Michigan UCC, MCL 440.9101 et seq.,[1] provides that, after default, a secured party “\m\ay reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure.” MCL 440.9601(l)(a). A secured party “[m]ay” also “[n]otify an account debtor or other person obligated on collateral to make payment or otherwise render performance to or for the benefit of the secured party.” MCL 440.9607(l)(a). Notably, the UCC does not require a secured party to foreclose, to order an account debtor to pay the secured party, or to enforce the claim by judicial procedure.
Particularly relevant to this case is MCL 440.9601(1), which states that “[a]fter default, a secured party has the rights provided in this part and, except as otherwise provided in section 9602,[2] those provided by agreement of the parties.” The security agreement in this case set forth certain rights and remedies in the event of default. The agreement provided, in relevant part:
Other Rights and Remedies. Lender [i.e., Summit] shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender *653 shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise. [Emphasis added.]
Summit opted to declare the loans in default, accelerate the balances, and enter into a forbearance agreement with defendant. A forbearance agreement is an agreement between a defaulting party and a lender regarding the manner in which the parties intend to handle the default. See Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC, 481 Mich 618, 622; 752 NW2d 37 (2008); Fed Nat’l MtgAss’n v Wingate, 404 Mich 661, 669; 273 NW2d 456 (1979). Pursuant to the forbearance agreement, Summit allowed defendant to continue to operate its business and generate income in order for defendant to repay its loan balances. It appears that Summit’s approach was appropriate given that liquidating defendant’s assets would have purportedly resulted in Summit only being repaid only approximately 20 percent of what it was owed. Pursuant to the security agreement and MCL 440.9601(1), Summit was entitled to enter into the forbearance agreement with defendant as a remedy for defendant’s default.
Plaintiff argues that this case is on all fours with Frierson v United Farm Agency, Inc, 868 F2d 302 (CA 8, 1989), and that a similar result is compelled. In that case, a judgment creditor served summonses of garnishment on three banks, including Merchants Bank (Merchants), in which the debtor had deposit accounts. Id. at 303. Merchants maintained that it had a perfected security interest in all of the debtor’s funds on deposit and denied that the funds belonged to the debtor. Id. The trial court determined that Merchants had a prior perfected security interest in all three bank accounts but that, “because Merchants did not declare [its loan to the debtor] in default or follow procedures required *654 by the loan agreement to enforce its U.C.C. and contract rights, Merchants had neither a present right to the funds nor a right to have the garnishment quashed.” Id. The appellate court agreed, stating that “Merchants cannot refuse to exercise its rights under the security agreement, thereby maintaining [the debtor] as a going concern, while it impairs the status of other creditors by preventing them from exercising valid liens.” Id. at 305. The court concluded by stating that the judgment creditor could garnish the funds, but that “Merchants’ security interest in the funds will continue, and Merchants can trace and recapture when it chooses to declare the loan in default and accelerate the debt.”
In this case, unlike in Frierson, Summit did declare its loans to defendant in default and accelerate the balances due. Summit and defendant also entered into a forbearance agreement pursuant to which defendant made payments to Summit. The security agreement specifically authorized Summit to exercise any and all rights and remedies against defendant, and it appears that Summit opted for the remedy that gave it the best chance of collecting the total balance due. Thus, this case is distinguishable from Frierson, in which Merchants did not declare the debtor in default and did not accelerate the debt. In short, because the UCC did not require Summit to foreclose, liquidate, or seize defendant’s assets and because MCL 440.9601(1) and the security agreement authorized Summit’s method of collecting on the debt, the trial court did not abuse its discretion by quashing plaintiffs writs of garnishment and enjoining plaintiff from taking other collection activities against defendant.
Plaintiff also argues that the trial court erred by failing to order Summit to marshal defendant’s assets not subject to plaintiffs writs of garnishment and to *655 enforce Gilkey’s personal guaranty granted as security to Summit in exchange for Summit’s loans to defendant. Plaintiff contends that, at a minimum, the trial court erred by failing to conduct an evidentiary hearing to determine whether defendant’s assets should be marshaled.
“[T]he equitable remedy of marshaling of assets exists for the benefit of persons who hold a subordinate secured claim in property[.]” SCD Chem Distrib, Inc v Maintenance Research Laboratory, Inc, 191 Mich App 43, 46; 477 NW2d 434 (1991). Pursuant to the doctrine:
[W]here a senior creditor has a lien against two funds or parcels and the junior lienor has a lien against only one of those properties, a court of equity may compel the former to satisfy its claim out of the property that is encumbered by only its lien. However, application of the doctrine is limited in that it will not be allowed if it cannot be invoked without prejudicing or injuring the rights of the senior creditor or where it would harm the interests of a third party. [Id.]
Even assuming that plaintiff held a subordinate secured claim in the accounts receivable and could therefore properly invoke the doctrine of marshaling,[3] plaintiff’s argument is not ripe for this Court’s review. The trial court opined that it did not appear that marshaling defendant’s assets would benefit plaintiff because it did not appear that defendant had sufficient assets to pay Summit, the state and federal taxing authorities, and plaintiff, in that order. Nonetheless, the court stated several times that it would *656 hold an evidentiary hearing to determine the amount of defendant’s assets if plaintiff wanted to pursue the matter. In fact, the trial court continued the injunction on plaintiff’s collection activities “until we have an evidentiary hearing.” Plaintiff, however, never requested an evidentiary hearing and instead sought leave to appeal in this Court arguing that, at a minimum, the trial court erred because it did not conduct an evidentiary hearing. Because the trial court offered to conduct an evidentiary hearing to determine whether the doctrine of marshaling would benefit plaintiff, and plaintiff declined to pursue the matter, this issue is not ripe for our review. Generally, “appellate review is limited to issues decided by the trial court.” Bowers v Bowers, 216 Mich App 491, 495; 549 NW2d 592 (1996).
Finally, plaintiffs argument that the trial court erred by failing to require Summit to enforce the personal guaranty that Gilkey had granted to Summit is part and parcel of plaintiffs argument pertaining to marshaling of defendant’s assets and is likewise not ripe for this Court’s review. Courts have recognized that the property of a guarantor shareholder may be considered the property of the corporate debtor in certain circumstances. See, e.g., In re Dealer Support Servs Int’l, Inc, 73 BR 763, 765 (ED Mich, 1987). Those circumstances include when the shareholder treated the corporation as an alter ego, when the shareholder holds property against the corporation that equitably should be deemed a contribution to the corporation’s capital, and when the shareholder has engaged in inequitable conduct. Id. The record is devoid of any indication that these circumstances applied to Gilkey. Indeed, this matter is an appropriate issue for examination at an evidentiary hearing.
*657 Affirmed. Summit, being the prevailing party, may tax costs pursuant to MCR 7.219.
SAWYER, EJ., and Meter and DONOFRIO, JJ., concurred.

 Effective July 1, 2013, article 9 of the Michigan UCC was amended by 2012 PA 87. Our references to UCC provisions are to those in effect at the time that the trial court decided this dispute.

 MCL 440.9602 pertains to rights that a debtor or obligor may not waive.

 Because the trial court entered a temporary restraining order enjoining plaintiff from serving the writs of garnishment, plaintiff never became a lien creditor whose rights attached. “[A] garnishment lien attaches upon service of the writ.” Mich Tractor & Machinery Co v Elsey, 216 Mich App 94, 97; 549 NW2d 27 (1996) (quotation marks and citation omitted).