*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

R. A. D. CONSTRUCTION, INC.,

       Plaintiff-Appellant,

v

DELRICE DAVIS, LATISHA DAVIS, INTEGRITY
FIRST ADJUSTING COMPANY, LLC, TOYIA
BOYD, and WARREN WILLIAMS,

       Defendants/Cross-Defendants-
       Appellees,

and

MT BANK, JP MORGAN CHASE BANK, NA, and
XYZ BANK, NA,

       Defendants-Appellees,

and

STATE FARM FIRE AND CASUALTY
COMPANY,

       Defendant/Cross-Plaintiff-Appellee.

FOR PUBLICATION
August 10, 2023
9:05 a.m.

Nos. 361177; 363142
Wayne Circuit Court
LC No. 20-001076-CH

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

REDFORD, P.J.

In Docket No. 361177, plaintiff, R. A. D. Construction, Inc. ("RAD"), appeals as of right the trial court's order, entered after a bench trial, ruling that RAD failed to prove a cause of action for common-law or statutory conversion against defendants JP Morgan Chase Bank, N. A. ("Chase Bank"), Integrity First Adjusting Company, LLC ("Integrity"), and Toyia Boyd. In Docket No. 363142, RAD appeals as of right the trial court's orders awarding defendants case evaluation

-1-

sanctions. This Court ordered that these appeals be consolidated to advance the efficient administration of the appellate process. *RAD Construction Inc v Delrice Davis*, unpublished order of the Court of Appeals entered January 10, 2023 (Docket Nos. 361177; 363142). For the reasons stated in this opinion, we affirm the trial court's order dismissing RAD's claims against Chase, Integrity and Boyd, but reverse the trial court's case evaluation sanctions decisions and vacate the court's orders awarding case evaluation sanctions to those defendants.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises from the settlement of an insurance claim following a kitchen fire at a home owned by defendants Delrice and Latisha Davis. The Davises had a homeowner's insurance policy with defendant State Farm Fire and Casualty Company ("State Farm"). After the fire, Delrice Davis ("Davis") entered into a contract with defendant Integrity, which is solely owned by defendant Boyd, "to assist in the preparation, presentation and adjusting of insurance claim" with State Farm. Davis agreed to pay Integrity a fee of 10% of the insurance proceeds obtained in settlement of the loss. Davis also entered into a contract with RAD to make all necessary repairs caused by the fire. The contract allowed RAD to negotiate with State Farm and instructed State Farm to send all structural proceeds to RAD. Davis also "irrevocably assign[ed] to the Contractor, its successors or assigns, all insurance proceeds due the Owner as a result of the fire . . . ." Davis signed a "Certificate of Completion & Satisfaction" on August 19, 2019, for the work performed by RAD. Also on August 19, 2019, RAD submitted a final invoice for $17,246.26 for packing, storing, and cleaning the Davises' belongings.

On August 23, 2019, State Farm issued two checks in settlement of the insurance claim: one issued to "Delrice Davis & Integrity First Adjusting Co & Associates & R.A.D. Construction, LLC," in the amount of $36,915.01 for personal property loss, and the other issued to "Delrice Davis & M T Bank Its Successors and or Assigns & Integrity First Adjusting Co & Associates & R.A.D. Construction, LLC," in the amount of $9,776.70, for "Recovery Cost Benefit for the Structure." Both checks were sent to Boyd. According to Boyd, she sent the checks to Davis and asked him to obtain the endorsements of the other named payees. Davis thereafter returned the checks with the endorsements to Boyd, who added Integrity's endorsement and then deposited the checks into Integrity's account at Chase Bank. The first check was endorsed with three signatures and a stamp by M&T Bank. The second check was also endorsed with three signatures and a stamp by M&T Bank. After deducting Integrity's 10% fee, Boyd disbursed the remaining proceeds to Davis via two cashier's checks, in the amounts of $32,723 and $8,953, respectively.

RAD filed a claim of lien against the Davises' property. RAD claimed that the Davises owed a total amount of $90,822.66 and paid RAD $43,750, so it claimed a lien amount of $47,072.66.

RAD also filed this action against the Davises, Integrity, Boyd, Warren Williams,[1] M&T Bank,[2] Chase Bank, XYZ Bank, N. A., and State Farm. Relevant to this appeal, RAD alleged that

---

[1] Warren Williams is Boyd's husband.

[2] RAD alleged that M&T Bank may have had a property interest in the Davises' residence.

Davis breached his contract with RAD, and alleged that Chase Bank, Integrity, and Boyd were liable for common-law and statutory conversion respecting RAD's interest in the two checks. The Davises failed to defend and the trial court entered a default judgment against them in favor of RAD in the amount of $54,303.66, plus costs of $748.62 and statutory interest. The case proceeded to trial on the conversion claims against Chase Bank, Integrity, and Boyd. The parties agreed to submit the case for a bench trial on briefs.

RAD asserted in its trial brief in its case against Integrity and Boyd that RAD's endorsements on the checks were forgeries because the checks were never presented to it for endorsement. RAD argued that it was entitled to the proceeds of the checks as the rightful owner because it did not believe that any of the other payees had an interest in the proceeds. RAD argued that Davis had assigned his interest in the checks to it, and Integrity did not have an interest in the checks because Integrity's contract with Davis was void. RAD claimed that Integrity converted the checks when it ignored RAD's sole interest in the checks and deducted 10% of the proceeds for Integrity's fee and distributed the remaining funds to Davis. RAD asked the trial court to award it $46,691.71 for its common-law conversion claim and $140,075.13 for its claim of statutory conversion against Integrity and Boyd.

Integrity and Boyd argued that RAD failed to prove that it had a property interest in the proceeds of the check. RAD based its claim to the money on the assignment clause in its contract with Davis. The assignment concerned repairs that RAD would perform on any structural damage. However, RAD failed to perform any structural repairs. Moreover, RAD never made a legal demand for payment, and therefore, Integrity never refused RAD's demand. Integrity and Boyd also asserted that because Davis entered into a contract with Integrity first, Davis's assignment to RAD was subject to the provision of Integrity's contract with RAD that required Davis's proceeds from State Farm to be paid directly to Integrity. Integrity and Boyd denied that their actions amounted to common-law or statutory conversion. All payees had endorsed the checks and Integrity had no knowledge of any forgeries. As such, Integrity and Boyd did not wrongfully exert dominion over another's property. Finally, RAD had not established that the contract between Integrity and Davis was invalid and unenforceable.

Regarding Chase Bank, RAD asserted that, as the depository and drawee bank, Chase Bank bore liability for common-law conversion because the negotiated checks contained forged endorsements. RAD contended that Chase Bank deposited the proceeds into Integrity's bank account despite Integrity's lack of entitlement to enforce the instruments or receive payment. RAD argued that Chase Bank was liable to RAD for $46,691.71, the total of the proceeds from the two checks.

Chase Bank argued that RAD did not have a valid claim against it. Chase Bank asserted that State Farm made no claim against Chase Bank for wrongful payment on the checks, and State Farm intended the checks as payment to Davis. When Integrity and Boyd deposited the checks, they contained the endorsements of all payees. Chase Bank did not convert any of the funds or receive any of the proceeds. RAD countered that Chase Bank was liable for $46,691.71 pursuant to MCL 440.3420, because Chase Bank made payment to Integrity, who was not entitled to receive payment. Chase Bank responded that RAD could not rely on MCL 440.3420 because that statute is part of the Uniform Commercial Code ("UCC") and RAD failed to plead a cause of action under the UCC. Chase Bank further asserted that RAD never alleged that it was both the drawee and the

depository bank. Chase Bank argued further that RAD's common-law conversion claim applied only to Integrity and Boyd because Integrity negotiated and deposited the checks into Integrity's bank account. Chase Bank asserted that the checks contained the endorsements of the payees and at most RAD had a claim against the Davises or Integrity for any portions of the funds that RAD could establish entitlement to receive as payment from State Farm.

The trial court noted that RAD's complaint alleged common-law conversion against Chase Bank, but that it argued a claim for conversion under the UCC. The court observed that these are two separate causes of action, but it agreed to consider both theories. The trial court found that common-law conversion only applies to chattel, not negotiable instruments, but even if common-law conversion applied to negotiable instruments, RAD failed to present credible evidence that Chase committed common-law conversion. The court found that the checks were properly endorsed and Chase Bank cashed the checks pursuant to its obligation as a drawee or depository bank. The court concluded that Chase Bank did not act in an improper way, for an improper purpose, or deliver money without authorization.

The trial court also found that RAD failed to establish that Chase Bank violated MCL 440.3420(1) because Chase Bank did not make a payment on the instrument to a person not entitled to receive payment. The trial court ruled that RAD had no cause of action against Chase Bank under the UCC. The court also found that plaintiff failed to establish that Integrity lacked entitlement to cash the check and disburse the proceeds because Integrity was a named payee on the check.

The trial court also found that Integrity and Boyd did not wrongfully exert dominion over another person's property because all payees had endorsed the checks and they disbursed the checks pursuant to the contract with Davis. The court found that the disbursement of the checks was not inconsistent with RAD's interests pursuant to its contract with Davis. Davis held sole responsibility for paying RAD. The trial court also found that RAD failed to establish a claim for statutory conversion against Integrity and Boyd. RAD claimed that Integrity and Boyd had no interest in the proceeds of the checks because the contract between Integrity and Davis was void. However, the trial court concluded that RAD failed to establish that the contract was void.

Accordingly, the trial court dismissed RAD's claims against Chase Bank, and against Integrity and Boyd, "because [RAD] has not proven a cause of action." This appeal followed.

## II. DOCKET NO. 361177

RAD argues that the trial court erred by dismissing its claims for conversion against Chase Bank, Integrity, and Boyd. We disagree.

The trial court's findings of fact following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo. *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016); see also *Ladd v Motor City Plastics Co*, 303 Mich App 83, 93; 842 NW2d 388 (2013). "A finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Smith v Straughn*, 331 Mich App 209, 215; 952 NW2d 521 (2020) (citation and quotations omitted). This

-4-

Court reviews matters of statutory and contract interpretation de novo. *Nickola v MIC Gen Ins Co*, 500 Mich 115, 122; 894 NW2d 552 (2017).

Initially, RAD argues that the trial court erred by failing to address its claim that the endorsements of RAD and M&T Bank on the checks were forgeries. After reviewing the record, however, it is apparent that RAD did not present any evidence of forgery. Rather, RAD seems to argue that defendants admitted or conceded that the endorsements were forged because they never challenged RAD's allegations that the endorsements were forged. RAD fails to cite to any pertinent legal authority to support its assertion that defendants carried the burden of proof or the burden of producing evidence that the signatures were not forgeries. RAD, however, as the party claiming conversion and forgery, carried the burden of proof. *Mich Tractor & Machinery Co v Elsey*, 216 Mich App 94, 102; 549 NW2d 27 (1996). "A plaintiff's burden of proof encompasses two separate concepts: (1) the burden of persuasion, and (2) the burden of going forward with the evidence." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 175-176; 530 NW2d 772 (1995) (citations omitted). "While the former does not shift during the course of a trial, the latter may shift to the opposing party." *Id.* at 176 (citation omitted). However, "the burden of persuasion never shifts during trial from the plaintiff to the defendant. Only the burden of going forward may shift from one side to the other at various times during the trial as evidence is introduced by the respective parties." *Mich Tractor*, 216 Mich App at 102 (citation omitted).

As a plaintiff pursuing a claim of conversion, RAD needed to present evidence that defendants committed conversion when Integrity and Boyd deposited the checks and Chase Bank accepted checks with alleged forged endorsements. Because RAD failed to present any such evidence, the burden of going forward with evidence that the endorsements were not forged never shifted to defendants. *Mich Tractor*, 216 Mich App at 102. Although RAD is correct that the trial court did not directly address RAD's assertion that the signatures were forged, the record reflects that RAD presented no evidence of forgery for the court to consider. Moreover, the record does not support RAD's assertion that defendants never disputed that the signatures were forgeries. On the contrary, the Final Joint Pretrial Order identified this as a disputed issue for trial.

We also reject RAD's argument that Integrity was not entitled to enforce its contract with Davis because the Department of Insurance and Financial Services had not approved its contract form until after Integrity and Davis entered into the contract, rendering it void. MCL 500.1226(4) requires that "an adjuster for an insured shall not provide his or her services to a client until the adjuster has contracted in writing, on a form approved by the commissioner[.]" RAD asserts that Integrity did not receive approval of its contract form until two months after Davis and Integrity entered into the contract. However, the e-mail on which RAD relied as evidence that Integrity did not receive the necessary approval of its contract form does not establish that the contract Davis signed was not approved. Rather, the e-mail states "[t]hank you for submitting your revised contract and letter requesting to amend your application. The attached residential public adjusting contract is approved." RAD did not submit the contract that was attached to the e-mail for the trial court to determine whether the contract that was approved was the contract that Davis signed. Accordingly, the trial court did not clearly err by finding that RAD failed to establish that the contract between Davis and Integrity was void.

Next, Chase Bank argues that RAD was not entitled to rely on a claim of conversion under the UCC because it did not allege a UCC violation in its complaint. "Michigan is a notice-pleading

-5-

state." *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011). A complaint must contain "[a] statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend." MCR 2.111(B)(1). This Court looks "beyond mere procedural labels and read[s] the complaint as a whole when ascertaining the exact nature of a plaintiff's claims." *Johnson*, 292 Mich App at 368. Reading RAD's complaint as a whole, the allegations were sufficient to reasonably inform Chase Bank that RAD's conversion claim was subject to MCL 440.3420.

Although RAD failed to specifically invoke the UCC in its complaint, MCL 440.1103(2) provides that "[u]nless displaced by the particular provisions of this act, the principles of law and equity . . . shall supplement its provisions." MCL 440.3420(1) governs negotiable instruments and states that "the law applicable to conversion of personal property applies to instruments." There is no dispute that this case involved claims of the conversion of negotiable instruments. Additionally, Chase Bank alleged affirmative defenses pursuant to the UCC, and MCL 440.3420 in particular, in its response to RAD's complaint. Thus, the trial court could reasonably conclude that Chase Bank understood that RAD asserted a claim of conversion of two negotiable instruments, and that it would be required to defend this claim under the UCC. The trial court, therefore, did not err by considering RAD's argument in this regard and it did not err by finding that RAD failed to establish a claim of conversion against Chase Bank or against Integrity and Boyd.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (citations and quotations omitted). "A check is considered the personal property of the designated payee." *Pamar Enterprises, Inc v Huntington Banks of Mich*, 228 Mich App 727, 734; 580 NW2d 11 (1998). RAD principally argues that defendants are liable for conversion because Boyd deposited the checks and Chase Bank honored them with forged signatures. To prevail on this claim, RAD needed to establish that Chase Bank paid the proceeds to a person or entity unentitled to enforce the instrument or receive payment. Specifically, MCL 440.3420(1) provides:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

MCL 440.3110(4) provides that, "[i]f an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." "When the word 'and' separates the names of two payees on an instrument, the instrument is payable jointly and not alternatively." *Pamar*, 228 Mich App at 733. The check for $36,915.01 was made payable to "Delrice Davis & Integrity First Adjusting Co & Associates & R.A.D. Construction, LLC." The check for $9,776.70 was made payable to "Delrice Davis & M T Bank Its Successors and or Assigns & Integrity First Adjusting Co & Associates & R.A.D. Construction, LLC." Accordingly, both checks were payable jointly and not alternatively. *Id.*

Both checks contained four endorsements. The trial court found that when Boyd deposited and Chase Bank received the checks, they had all of the necessary endorsements. This finding is not clearly erroneous because a review of the checks reveals an endorsement from each payee. *21st Century Premier Ins Co*, 315 Mich App at 443. As discussed earlier, RAD failed to produce any evidence that established that the endorsements were forgeries. Therefore, the trial court did not err by concluding that RAD failed to establish that either Chase Bank or Integrity and Boyd committed conversion when Chase Bank made payment to Integrity, an entity that was entitled to enforce the instrument or receive payment because the checks contained all of the necessary endorsements and Integrity was a named payee.

RAD also claimed that Integrity and Boyd were liable for statutory conversion. MCL 600.2919a provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
>
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.
>
> (2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

"[C]onversion 'to the other person's own use' requires a showing that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines & Equip*, 497 Mich at 358-359. "An action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Citizens Ins Co of America v Delcamp Truck Ctr, Inc*, 178 Mich App 570, 576; 444 NW2d 210 (1989).

RAD claimed that Integrity and Boyd used the insurance proceeds for their own use when Boyd deposited the forged checks into Integrity's account, retained Integrity's fee pursuant to its contract with Davis, and paid Davis the remaining proceeds. Evidence established that when Boyd received the two checks from State Farm, she called Davis and informed him that she received the checks and told him that if he wanted her to cash them, he had to obtain endorsements from M&T Bank and RAD, along with his own endorsement. Boyd also stated that if Davis wanted to cash the checks, she would require Davis to pay Integrity its 10% fee before Boyd endorsed the checks and sent them to him. Davis asked Boyd to cash the checks. Boyd sent Davis the checks to obtain the endorsements of RAD and M&T Bank. When Davis returned the checks to Boyd, the checks contained endorsements from Davis, RAD, and M&T Bank. Boyd then added Integrity's endorsement. After Boyd endorsed the checks for Integrity, she deposited them into Integrity's

account and, after deducting Integrity's 10% fee, issued cashier's checks to Davis for the remaining amounts.

Boyd testified that she did not have a copy of the contract between RAD and Davis, and had never spoken to anyone from RAD. Therefore, she distributed the proceeds to Davis to make the necessary payments. On this evidence, the trial court did not err by finding that Integrity and Boyd did not commit common-law or statutory conversion. Boyd sent the checks to Davis with instructions to obtain all of the necessary endorsements. Once he returned the checks to her with the endorsements, she added Integrity's endorsement, retained Integrity's fee under its agreement with Davis, and disbursed the remaining proceeds to Davis. Integrity and Boyd acted with Davis's knowledge and permission. While Boyd knew of the contract between Davis and RAD, she did not know the terms. Boyd released the funds to Davis to distribute as needed. Neither Integrity nor Boyd retained the full amount of the checks when they were "entitled to only a portion of that amount." *Citizens Ins Co of America*, 178 Mich App at 576 (1989).

For these reasons, we affirm the trial court's order dismissing RAD's conversion claims against Chase Bank and against Integrity and Boyd.

III. DOCKET NO. 363142

RAD argues that the trial court erred by awarding case evaluation sanctions to Chase Bank and to Integrity and Boyd because the trial in this case occurred after our Supreme Court amended MCR 2.403 effective January 1, 2022, eliminating the case evaluation sanctions provision. We agree.

This Court reviews a trial court's decision to award case evaluation sanctions de novo. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). However, the amount of an award is reviewed for an abuse of discretion. *Id.* A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). This Court reviews the interpretation and application of court rules de novo as a question of law. *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999).

The record indicates that the parties engaged in case evaluation during January 2021 and RAD rejected the case evaluation award on February 9, 2021. MCR 2.403 then provided in Subpart (O)(1) that if "a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." This case went to trial and RAD did not obtain a more favorable verdict when the trial court rendered its opinion and order on April 12, 2022, dismissing RAD's claims against Chase Bank, Integrity and Boyd. The trial court entered its orders granting Chase Bank, Integrity and Boyd case evaluation sanctions on September 7, 2022.

Our Supreme Court amended MCR 2.403 and among other things eliminated Subpart (O). The amendments became effective January 1, 2022. See 508 Mich clxiii. MCR 1.102 requires applying the court rules to all pending cases. Amended court rules apply to pending actions unless there is a reason to apply the old rules. *Reitmeyer*, 237 Mich App at 337. We find no reason to apply the old rule in this case. The provision authorizing case evaluation sanctions having been

eliminated, the trial court had no authority to sanction RAD after January 1, 2022. By ordering case evaluation sanctions against RAD, the trial court erred. Therefore, we reverse the trial court's decisions granting Chase Bank's, Integrity and Boyd's respective motions for case evaluation sanctions, and vacate the trial court's case evaluation sanction orders.

Therefore, we affirm the trial court's order dismissing RAD's claims against Chase, Integrity and Boyd, but reverse the trial court's case evaluation sanctions decisions and vacate the court's orders awarding case evaluation sanctions to those defendants.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick